ST. LOUIS SOUTHWESTERN RY. CO. v. BROWNE GRAIN CO. (No. 1285.)

(Court of Civil Appeals of Texas. Texarkana. March 26, 1914.)

1. PLEADING (§ 8*)—ALLEGATIONS—CONCLUSIONS.

Where the petition in an action by a carrier for freight alleged that defendant bought corn of the consignor, f. o. b. cars, that the bills of lading stipulated that the owner or consignee should pay the freight, that defendant sold the corn, indorsed the bill of lading, and delivered the same to the purchaser, to whom the carrier delivered the corn at the point of destination, an averment that defendant was the owner and the consignee named in the bill and an averment that defendant was the assignee of the shipper or person signing the bill were mere legal conclusions, and could not be considered in determining the sufficiency of the petition to state a cause of action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½, 68; Dec. Dig. § 8.*]

2. CARRIERS (§ 194*)—CARRIAGE OF GOODS—LIABILITY FOR FREIGHT.

One who is not the consignor or consignee of goods, and who does not receive the goods from the carrier at the point of destination, but who merely indorses the bill of lading, is not liable for the freight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

3. CARRIERS (§ 194*)—CARRIAGE OF GOODS—LIABILITY FOR FREIGHT.

Where a consignee in a bill of lading stipulating that the owner or consignee should pay the freight assigned the bill of lading before delivery, and the carrier made delivery to the assignee, who purchased the goods from the consignee, the consignee was not liable for the freight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

Appeal from Collin County Court; H. L. Davis, Judge.

Action by the St. Louis Southwestern Railway Company against C. V. Browne and another, doing business under the name of the Browne Grain Company. From a judgment of dismissal, plaintiff appeals. Affirmed.

This suit was commenced in a justice court July 5, 1910. Appellant was the plaintiff. It sought a recovery of $44.38, which it alleged to be due it by appellees, C. V. and E. P.

Browne, who did business under the name of "Browne Grain Company," as freight on a shipment made November 18, 1907, and a shipment made December 28, 1907. April 4, 1911, appellant so amended its demand as to claim, in addition to said sum of $44.38, the sum of $125.75 as freight due it on a shipment made in February, 1908, and on a shipment made March 9, 1909. The judgment of the justice court was in appellees' favor. Appellant prosecuted an appeal to the county court, where, on June 6, 1913, it filed an amended petition, in which it alleged that it .was a railway corporation, and, as a common carrier, carried freight for hire, and then alleged that on December 27, 1907, appellees "had shipped from Chickasha, I. T., to Stuttgart, Ark., a car of ear corn * * * over the line of this plaintiff, but not all of the distance on this plaintiff's line. The lawful charges for freight on said shipment, as fixed by the tariffs regularly on file with and approved by the Interstate Commerce Commission and, in effect, at the time, was $120.62, but the plaintiff, through its agents, collected only the sum of $106.43, leaving a balance still due of $14.19. Said car was delivered by this plaintiff's agents at Stuttgart, Ark., and it was the duty of plaintiff and its agents to collect the full amount of the lawful freight charges."

After making similar allegations with reference to other interstate shipments, and claiming as unpaid of the freight charges thereon sums aggregating $155.21, appellant further alleged as follows:

"(5) In each instance above stated defendants bought the contents of the car above stated, and a bill of lading was issued for each car, and each bill of lading was signed by the agent of the railway company issuing the same, and by the shipper from whom the defendants bought the contents thereof, and in each instance the said bill of lading contained the following clause, to wit: 'It. is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained, and which are agreed to by the shipper and accepted for himself and assigns.' Also the following clause: 'The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery.'

"(6) The said shipments in each instance passed over a portion of various lines of railway, and, upon delivery of the said cars, it became the duty of the plaintiff to collect the total amount of freight charges due in each instance on each of said cars, and, if mistaken in this allegation, then it alleges that, by reason of the law applicable to the said shipments and the facts, the plaintiff has become and is the assignee of all parties interested in said shipments and over whose lines of railway the same moved, and is therefore entitled to prosecute this action.

"(7) In each instance above stated the defendants bought the contents of each of the said cars f. o. b. the point of origin, and in each instance sold each of the said cars delivered at destination, and indorsed the bills of lading in each case.

"(8) By reason of the premises, the defendants in each instance became the owner and the consignee of each of the said shipments, and also became the assignee of the shipper or person who signed the said bills of lading.

"(9) The words 'lawful charges,' as used in the preceding clauses hereof, is meant and intended to mean the lawful freight charges as fixed and determined by the tariffs lawfully issued, published, and filed with the Interstate Commerce Commission, in effect, at the several times of the shipments herein made and applying to the articles herein specified.

"(10) By reason of the premises, the defendants have become bound and obligated to pay all the charges on said shipment, and this action is therefore founded upon and is in part evidenced by the said bills of lading, which constitute a written contract on the part of the defendants to pay the several amounts herein sued for."

An exception to the petition, on the ground that it appeared therefrom that the cause of action asserted therein was barred by the statute of limitations of two years, was sustained, and, appellant declining to amend, the cause was dismissed.

E. B. Perkins and D. Upthegrove, both of Dallas, and Garnett & Hughston, of McKinney, for appellant. Sam Neathery, of McKinney, for appellee.

WILLSON, C. J. (after stating the facts as above). We are of the opinion the petition does not state a cause of action against appellees, and that the judgment therefore should be affirmed, without inquiry as to whether, if it did state a cause of action, the statute of limitations of two years would be applicable to it or not.

[1] It appears from the allegations that appellees bought the corn of the consignors thereof f. o. b. the cars at the points where the shipments originated. It further appears that bills of lading covering the shipments, containing a stipulation that "the owner or consignee should [shall] pay the freight and all other lawful charges on said property, and, if required, should [shall] pay the same before delivery," were issued by appellant to the consignors. And it further appears that appellees, having sold the corn, indorsed the bills of lading and delivered same to the purchasers, to whom appellant delivered the corn at the points to which same was destined. It is not alleged, except as a con-

clusion of the pleader from facts alleged, that appellees were the consignees named in the bills; and from the same facts the pleader draws another conclusion, to wit, that appellees were "the assignees of the shipper or person who signed the bills of lading." If by the latter conclusion the pleader meant, as it seems he did, that the consignors were also the consignees, and, as such, had assigned the bills of lading to appellees, then it is not consistent with the other conclusion drawn from the same facts; and for that reason, and for the further reason that, like the other conclusion, it was not warranted by the facts stated, it should not, any more than the other conclusion, be given any effect in determining the sufficiency of the allegations to show a cause of action. Ewing v. Duncan, 81 Tex. 236, 16 S. W. 1000. In the case cited the court said: "Courts sit to try causes upon positive averments, and not to hear and determine issues presented by allegations which affirmatively show that the pleader is in doubt as to the truth of the matter alleged."

[2, 3] But, if the conclusions of the pleader should be treated as allegations of fact, and not within the rule announced in the quotation just made from the Ewing Case, it would still appear that the petition did not state a cause of action against appellees; for, if they were neither the consignors nor consignees of the corn, nor the persons to whom same was delivered at its destination, but merely the assignees or indorsees of the bills of lading, they clearly were never liable to appellant for the freight. And, if they were the consignees, the liability which prima facie would rest on them as such was shown not to exist by the allegation charging that appellees, before the corn was delivered, indorsed the bills of lading, and so assigned the property to other parties, to whom same was delivered by appellant. 4 Elliott on Railroads, § 1559; 2 Hutch. on Carriers, §§ 807, 808. In the work first cited it is said: "If the consignee assigns the bill of lading before the goods are delivered to him, his indorsee, by accepting them, usually becomes liable, and the carrier, by delivering them to the latter, releases the consignee, unless the indorsee received them as the consignee's agent." The same rule is thus stated by Hutchinson: "If the consignee assigns the bill of lading before the goods are delivered to him, and thus enables his indorsee to receive them, he does not become liable for the freight, unless his indorsee received them as his agent. The ordinary contract of the carrier is to deliver the goods to the consignee or his assigns, 'he or they paying freight,' and whoever accepts them under such a contract becomes liable for the freight; and if the carrier delivers them to an assignee of the contract, without relying upon his lien to secure its payment, he must be understood as relying upon the personal liability of the assignee alone, if the assignee does not act as the agent of the assignor. A new contract arises, under such circumstances, between the assignee and the carrier." It not only does not appear from the allegations that the parties to whom the corn was delivered were appellees' agents, but, on the contrary, it appears therefrom that at the time the corn was delivered to said parties they were not such agents, but were the owners of the corn by purchase from appellees. Treating appellees as the consignees named in the bills of lading, we do not think the stipulation therein that the "owner or consignee" should pay the freight affects the conclusion we have reached. That stipulation should, we think, be construed as meaning, not the owner or consignee of the corn at the time it was shipped, but the owner or consignee thereof at the time it was delivered by appellant.

The judgment is affirmed.