## DAVIS *v.* CITY FUEL COMPANY.

## Opinion delivered March 12, 1923.

1. CARRIERS—LIABILITY FOR FREIGHT CHARGES.—Where materials were shipped by the sellers consigned to a government quartermaster under a contract between the sellers and the buyer whereby deliveries were to be made f. o. b. at point of shipment and consigned to the quartermaster, to whom the buyer had resold, and from whom the carrier failed to collect the charges, the buyer was not liable, either upon the theory that sellers were acting as his agent in making delivery or upon the theory that the buyer was the consignee.

2. CARRIERS—LIABILITY OF CONSIGNEE FOR FREIGHT CHARGES.— Where goods are delivered by the carrier to the consignee upon condition that the latter will pay the freight charges, the law implies a promise upon his part from his acceptance of the goods.

3.  CARRIERS.—DIVERSION OF CONSIGNMENT—LIABILITY FOR FREIGHT
    CHARGES.—Where carloads of material were resold by the
    original consignee to a government quartermaster, and, with the
    carrier's consent, the cars were diverted to a subsequent buyer
    at another destination, who failed to pay the freight charges, the
    original consignee was not liable for the charges, the consign-
    ment being a single one from point of origin to the last
    named destination, the charges for which could not be split.

Appeal from Pulaski Circuit Court, Third Division;
*A. F. House,* Judge; affirmed.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellant.

The consignor is liable for the freight charges; and
this is true notwithstanding the provision in the shipping
contract that "the owner or consignee shall pay the
freight." 10 Corpus Juris, 445; 21 N. J. L. 292; 47
Am. Dec. 162. The owner of goods for whose benefit
and under whose direction they are shipped is liable
for the freight. 6 Cyc. 500; 97 Ark. 353; 10 Corpus
Juris 447. See also 73 Pa. Superior Ct. 588; 93 S. W.
1080; 161 S. W. 954; 105 S. E. 623.

*McMillen & Scott,* for appellee.

The facts are on all-fours with the facts in *Railroad
Company* v. *Freed,* 38 Ark. 614. Under the ruling in
that case the camp quartermaster was the owner of the
goods at all times they were in possession of the appel-
lant, which ownership the appellant recognized by de-
livering the goods to him. On delivery to the carrier,
title passes to the consignee. 112 Ark. 110; 106 Ark.
478. See also 255 Fed. 949; 166 S. W. 40; 10 C. J. 447;
2 Hutchinson on Carriers, 3d ed., § 808.

McCULLOCH, C. J. The Director General of Rail-
roads instituted against City Fuel Company, in the cir-
cuit court of Pulaski County, two suits, which were con-
solidated and tried together, to recover freight charges
on twenty-one carloads of material shipped during the
year 1918 from various points in and outside of this
State to Camp Pike. The material was purchased by the
fuel company from vendors at the several points of ship-
ment, the terms of the purchases being f. o. b. at those

points, and the fuel company resold the same to the quartermaster at Camp Pike. All of the carloads, save three, were shipped by the original vendors consigned to the quartermaster, to whom delivery was made by the carrier without collecting the freight charges. The bill of lading in each instance named the original vendor as consignor and the quartermaster as consignee. The three cars mentioned were consigned by the original vendors to the fuel company at Little Rock; the latter resold them while in transit, and the consignments were diverted to the quartermaster at Camp Pike.

The trial of the consolidated cases in the circuit court resulted in judgments against the fuel company, but the court granted new trials, and this is an appeal from the order, a stipulation being filed, in accordance with the statute, that "if the order be affirmed, judgment absolute shall be rendered against the appellant." Crawford & Moses' Digest, § 2129.

The contention of the plaintiff is that "although the City Fuel Company was not named on the billing, either as consignor or consignee, it had sold the goods to the consignee named, and, being the owner of the goods, had caused them to be transported to Camp Pike, consigned to the quartermaster * * * for the purpose of making delivery of its goods to the consignee, it became liable for the transportation charges."

The law on this subject, which is, in a large measure, controlling in the present case, was stated in *St. Louis S. W. Ry. Co.* v. *Gramling*, 97 Ark. 353, as follows:

"The owner of goods under whose direction they are shipped is liable for the freight. The consignee who actually receives the goods becomes responsible for the carriage charges on the ground that the goods are delivered to him upon the condition that he will pay such charges; and, from his acceptance of the goods, the law implies a promise upon his part to pay such charges. But where the consignee is only the agent of the owner, and this fact is known to the carrier, such

contract to pay the freight by the consignee will not be implied.   *   *   *   The carrier has the right to look to the consignor or owner of the goods for the payment of the freight, and he may waive his lien upon the goods by delivering them to the consignee and still hold the consignor liable upon the contract of shipment.''

In this statement of the law the court manifestly used the words ''consignor or owner'' interchangeably as meaning the same, unless the consignor is a different person from the owner and made the contract of shipment as agent for the owner, in which case the owner would be liable as an undisclosed principal.

The determination of this case turns, then, on the question whether, under the facts, the original vendors, as the consignors under the recitals of the bills of lading, acted for themselves or as agent of the fuel company. Under the contracts between the vendors and the fuel company the deliveries were to be made f. o. b. at point of shipment, consigned to the quartermaster at Camp Pike. The consignment was a part of the duty of the vendors in making delivery, and they were acting for themselves, not as agents for the fuel company. This is true, notwithstanding the fact that, under the contract of sale, the freight charges were to be paid by the purchaser at destination. The fuel company was not the undisclosed consignor, for it did not make the consignment, either in its own name or through an agent. Nor was the fuel company the consignee, either in name or undisclosed. There is evidence to show that the quartermaster was to receive the goods and pay the freight, not as agent for the fuel company, but on his own behalf as purchaser and consignee.

All that has been said thus far relates to the charges on the carloads other than the three which were consigned to the fuel company at Little Rock and resold and diverted in transit. The question of liability or nonliability for the charges on those three carloads rests on other grounds. It falls squarely within the principles announced in *St. Louis S. W. Ry. Co.* v. *Gramling, supra.*

The fuel company was originally the consignee, and by acceptance of the goods at destination would, by implied contract, have become liable for the freight charges. But there was, with consent of the carrier, a diversion to another consignee at another destination, and the consignment thereby became, in effect, one from the original point of origin to the last-named destination. It was a single consignment, and liability for the entire charges could not be split. The fuel company, or the last named consignee, is liable for all or none. The fuel company was consignee only during a part of the period of transit, ceasing to be such before the transportation service was complete. This does not make the fuel company liable for the charges for service.

The decision of the United States Circuit Court of Appeals for the Eighth Circuit in the case of *Wallingford* v. *Bush*, 255 Fed. 949, is directly in point and supports our conclusion in the instant case. The only difference between the two cases is that the consignment in the Wallingford case was under contract of sale to shipper's own order with bill of lading attached to draft, and the purchaser paid the draft and received the bill of lading during transit and then resold the goods and assigned the bills of lading to his purchaser. The court decided that the first purchasers did not, by becoming the owners during a brief period during transit, render themselves liable for the freight charges. There is no difference in principle between the question of liability in that case and in the present case. Our conclusion also finds direct support in the decision of a Texas Court of Appeals in the case of *St. Louis S. W. Ry. Co.* v. *Browne Grain Co.*, 166 S. W. 40.

The question of liability for freight charges, as between the quartermaster and the fuel company under this contract of sale, is not involved further than is necessary to determine whether or not the former received the consignment as agent of the latter, and, as before

stated, there was sufficient evidence to show that there was no agency.

The judgment is therefore affirmed, and judgment absolute will be rendered here against the plaintiff's right to recover.

SMITH, J., dissents.