Chesapeake and Ohio Railway Company, Appellant, v. Southern Coal, Coke & Mining Company, Appellee.

Opinion filed July 26, 1929. Rehearing denied September 6, 1929.

WILLIAM G. WISE, for appellant.

KRAMER, KRAMER & CAMPBELL and ROLAND H. WIECHERT, for appellee.

MR. JUSTICE NEWHALL delivered the opinion of the court.

This is a suit in assumpsit brought by the Chesapeake and Ohio Railway Company, an interstate carrier, and hereinafter called the plaintiff, against the Southern Coal, Coke & Mining Company, a corporation, hereinafter called the defendant.

The case is based on a claim for freight charges on thirteen carloads of coal transported by the plaintiff from different coal companies located in West Virginia to the defendant at Chicago, Illinois, in the fall of the year 1923. To plaintiff's declaration defendant filed a plea of general issue and a jury was waived and the cause tried before the court on a stipulation of facts and the evidence of one witness, the former manager of defendant's Chicago office, offered on behalf of plaintiff. The court found the issues in favor of the defendant and entered judgment against plaintiff for costs and this appeal is prosecuted by plaintiff from said judgment.

The defendant was the operator of several coal mines located in St. Clair and Clinton counties in Illinois with its general offices at St. Louis, Missouri. In

1923 defendant had an office in the City of Chicago which was maintained for the purpose of selling the output of its mines and also acted as selling agent for other mines. During the year 1923 there was shipped to the defendant at Chicago thirteen cars of coal over the lines of plaintiff from different coal companies in West Virginia. One of these cars of coal was purchased by appellee and it was the owner thereof; the other twelve cars were not owned by defendant but it was only acting as the selling agent for such coal on behalf of the producers. While the cars were en route to Chicago the defendant gave reconsigning orders to the plaintiff instructing the carrier to deliver the cars in question to the Lakeside Coal Company in Chicago on the tracks of the Simplex Steel Company. Each reconsigning order had a notation thereon that the freight bill was to be sent to the Lakeside Company; that the charges were to follow and if the instructions given in the order could not be followed for either routing, rate or charges to telephone the office of defendant immediately, and copies of each of said reconsigning orders were signed by the plaintiff's agent as a receipt and returned to the defendant for its files.

The plaintiff delivered the cars in question to the Lakeside Coal Company without collecting any of the freight charges due for transporting the coal from West Virginia to Chicago. The stipulation of facts further shows that on three of the reconsigning orders other cars of coal similarly shipped to the defendant at Chicago were reconsigned to the Lakeside Coal Company and freight charges were collected by the plaintiff from the Lakeside Coal Company; that the plaintiff delivered the thirteen cars of coal in question to the Lakeside Coal Company without collecting the freight charges thereon from point of origin to point of destination; that the Lakeside Coal Company was, at the

time of the delivery of said coal, on the credit list of the plaintiff; that subsequently the plaintiff endeavored to collect the freight charges from the Lakeside Coal Company but was unable to do so because that company had become insolvent and had ceased doing business. The record in this case does not disclose that the plaintiff made any attempt to collect the charges due from the shippers or consignors in West Virginia. The amount of the freight charges due on the thirteen cars aggregated the sum of $2,288.60.

It further appears from the stipulation of facts that the thirteen cars of coal in question were shipped on what are called "mine cards" and "memo waybills" and that no bills of lading were issued by the plaintiff on said shipments. On all of these mine cards covering the thirteen cars the defendant appears as consignee and different mining companies, from which the coal originated, appear as operators, consignors or shippers and on some of the memo waybills there was a notation that the shipments were from designated mines in Virginia for the account of the defendant at Chicago, Illinois. No contracts concerning these shipments, except the reconsigning orders, were signed by the defendant.

J. B. Kavanaugh, called as a witness on behalf of the plaintiff, testified that he was the manager of the Chicago office of the defendant during the year 1923 and that on practically all of the cars of coal involved in this suit defendant was acting as the agent of the shippers who were mining companies operating in West Virginia, with the exception of one car which was purchased outright from the Pemberton Fuel Company; that it was the practice of the witness to send statements to St. Louis, the home office of the defendant, and settlements would be made with the mines from that office; that the defendant remitted to the coal companies in Virginia the amount collected, less commis-

sions for selling, and that the defendant was not the shipper or consignor of any of the thirteen cars of coal; that the Chicago office of defendant was closed on May 1, 1925, and its records were shipped to St. Louis and that none of the records of defendant pertaining to said shipments in question could be located and the first knowledge that Kavanaugh had of plaintiff's claim was when suit was filed against the defendant in August, 1926.

The plaintiff contends that the defendant, being the consignee of the thirteen cars of coal in question and while said cars were en route having reconsigned them to the Lakeside Coal Company by written order, thereby became liable to pay the freight charges.

On the other hand the defendant contends that where the consignee of goods, transported by a common carrier, reconsigns the shipment and notifies the carrier to deliver the goods and collect freight charges from the one to whom the goods are delivered, the carrier so delivering the goods and failing to collect the freight charges cannot recover them from such consignee.

Under a somewhat similar state of facts as that disclosed in the record of the case at bar the Appellate Court for the First District in the case of *Chicago, I. & S. R. Co. v. McMillan & Bro. Coal Co.*, 207 Ill. App. 58, said: "No authority has been cited to sustain the proposition that a consignee by merely reconsigning the car becomes liable for the freight charges that have accrued up to that time. The liability of the consignee to pay the freight charges, in the absence of an express agreement, arises where the goods have been accepted by him knowing that the freight charges are unpaid and that the carrier looks to him for payment. *Union Pac. R. Co. v. American Smelting & Refining Co.* (121 C. C. A. 182), 202 Fed. 720; *Central R. Co. of New Jersey v. MacCartney*, 68 N. J. L. 165; *Central of Georgia Ry. Co. v. Southern Ferro Concrete Co.*, 193 Ala. 108.

"In the *Union Pacific* case, *supra,* the court said (p. 723): 'The reason for this rule is that the consignee accepts the goods with knowledge that the carrier looks to him for payment of the transportation charges and waives his lien for them by delivery in reliance upon the consignee's implied promise, evidenced by his acceptance of the goods, that he will pay the charges.' . . .

"Where a consignee of goods transported by a common carrier reconsigns the shipment and notifies the carrier to make delivery and collect freight from the person to whom the goods are delivered, the carrier, so delivering the goods and failing to collect the freight charges, cannot recover them from such consignee. 2 Hutchinson on Carriers (3rd Ed.), sec. 808; 4 Elliott on Railroads, sec. 1559; *St. Louis Southwestern Ry. Co. v. Browne Grain Co.,* (Tex. Civ. App.), 166 S. W. 40; *Tobin v. Crawford,* 5 M. & W. 235, affirmed 9 M. & W. 716; *Merian v. Funck,* 4 Denio (N. Y.) 110."

The Appellate Court for the First District in *Pere Marquette R. Co. v. American Coal & Supply Co.,* 239 Ill. App. 139, again reconsidered the principles announced in the *McMillan* case and after an elaborate discussion and distinction of many of the same cases relied upon by plaintiff adhered to the rule announced in the *McMillan* case and it was held by the court (p. 148) as follows: "In our opinion, the fact that an original consignee reconsigns the goods shipped and that the railroad complies with the order is no indication, either actual or constructive, that the railroad is looking to the consignee for the payment of the freight, or that the railroad is giving up the lien it has upon the goods for the amount of the freight charges. Of course, it may not be said that the railroad is giving up that lien, for it is retaining possession of the goods and is still in a position to enforce the lien unless the freight is paid. We are therefore of the opinion that the act of the consignee in reconsigning the coal in

question to Alma, Michigan, may not be said to be such a constructive act of ownership as to make the defendant liable for the freight charges to Chicago, the original point of consignment, or to the point where the coal was first diverted.''

Our Supreme Court in *New York Cent. R. Co. v. Philadelphia & Reading Coal & Iron Co.*, 286 Ill. 267, held that where the carrier of an interstate shipment delivers a carload of coal to the consignee without collecting the freight charges, and is thereafter unable to collect same from such consignee, owing to the latter becoming insolvent before judgment was recovered against him, does not estop the carrier from recovering such charges from the consignor. In this case the coal was delivered in Pennsylvania to the carrier by the coal company, consigned to itself at Chicago, and the coal company by an order in writing had directed that the car of coal be forwarded to one Cook & Company who had purchased the same and agreed to pay the freight charges thereon at Pullman, Illinois, the order stating ''charges follow.'' The coal was delivered to Cook & Company and at the time the railway demanded payment of the freight charges the same were not paid. Suit was brought against Cook & Company for the charges and the railway company was unable to collect because of the insolvency of Cook & Company. The court held that under all the authorities the coal company was primarily liable for the lawful transportation charges and that such liability could only be released by actual payment.

In *Louisville & N. R. Co. v. United States*, 267 U. S. 395, 69 L. Ed. 678, it was held: ''The general rule is that, if a consignee accepts a shipment, he becomes liable as a matter of law for the full amount of the freight charges.'' *Louisville & N. R. Co. v. Central Iron & Coal Co.*, 265 U. S. 59, 68 L. Ed. 900; *Pittsburgh, C., C. & St. L. R. Co. v. Fink*, 250 U. S. 577, 63 L. Ed. 1151.

The respective liabilities of shippers, consignees and their assigns for payment of freight charges to a carrier under the Interstate Commerce Laws were discussed and passed upon by the Supreme Court of the United States in the case of *Louisville & N. R. Co. v. Central Iron & Coal Co.*, 265 U. S. 59, 68 L. Ed. 900, and it was said by that court: "But delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act, impose upon the shippers an absolute obligation to pay the freight charges. The tariff did not provide when or by whom the payment should be made. As to these matters the carrier and shipper were left free to contract, subject to the rule which prohibits discrimination. The carrier was at liberty to require prepayment of freight charges, or to permit that payment to be deferred until the goods reached the end of the transportation. . . . To ascertain what contract was entered into we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract. Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges, and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee, for the shipper is presumably the consignor and transportation ordered by him is presumably on his own behalf and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the

shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability.''

In the case at bar there was no bill of lading which undertook to fix as a matter of contract whether the consignor or the consignee or his assignee should pay the freight. The mine cards or memo waybills contain no provisions from which it can be said that there was any contractual obligation on the part of the defendant to pay the freight in question. These mine cards or memo waybills were not signed by the defendant and, while it is true, that if the defendant had actually accepted and received the shipment in question, then as a matter of law, in the absence of express provision to the contrary, the defendant would be liable for the freight charges under the holding of the Supreme Court of the United States in the case of *Pittsburgh, C., C. & St. L. R. Co. v. Fink, supra,* nevertheless we are of the opinion that the liability of the defendant is to be determined by the provisions of said reconsignment orders.

When the defendant gave written instructions to plaintiff to deliver the cars in question to the Lakeside Coal Company (one who was not its agent), under express conditions that amounted to a direction to plaintiff to collect the freight at point of delivery from defendant's assignee, plaintiff having accepted such reconsignment order was bound as a matter of contract between the parties to look to such assignee for its freight charges in the event that defendant's assignee (the Lakeside Coal Company) accepted such shipment. The reconsignment orders were the only written contracts executed between plaintiff and the defendant relating to the freight charges in question and these reconsignment orders provided that the freight charges were to follow the shipment of coal, and, if these instructions given by the defendant to the plaintiff could

not be followed out, plaintiff was directed to immediately notify the defendant. It does not appear from the record that any effort has ever been made to collect the freight charges in question from the original shippers or consignors of the coal in question and it may be said, as was said in the case of *Louisville & N. R. Co. v. Central Iron & Coal Co., supra,* that if the secondary obligation of the defendant was to be implied from the fact of its causing the freight to be received for transportation, the promise was not necessarily one to pay at any time any freight charges which the carrier might find it impossible to collect from the consignee's assignee; and that when a shipment is accepted the party accepting such shipment, as a matter of law, becomes liable for the full amount of the freight charges and that this liability satisfies the requirements of the Interstate Commerce Act.

Plaintiff also contends that because the mine cards and memo waybills show that some of the cars in question were shipped by the mine owners for the account of the defendant that thereby the defendant became consignor of the shipments in question and was primarily liable for the freight charges. Under the stipulation of facts in evidence in this record we think the record shows that the various mine companies from whose mines the coal was shipped were the actual consignors of the coal and were the owners thereof, for in most instances the memo waybills showed the mine companies being designated as consignors.

In view of the holding of the United States Supreme Court in the case of *Louisville & N. R. Co. v. Central Iron & Coal Co., supra,* we are of the opinion that the obligation of the defendant to pay the freight charges in question is to be determined and measured by the mutual contractual arrangements which the defendant and the railway company entered into at the time of the giving and accepting of the said reconsignment

orders. It appears from the subnote to the decision in the said *Central Iron & Coal Company* case that the Interstate Commerce Commission has prescribed a provision with reference to uniform domestic bills of lading whereby the consignor may relieve himself of all liability for freight charges. Under this provision it is provided that in the uniform bill of lading a shipper by signing his name to such provision may direct the railroad company not to deliver the shipment to the consignee until the charges are collected and thereby the shipper is relieved from being compelled to pay any charges on such shipment.

We are of the opinion that the trial court did not err in its holdings on the propositions of law submitted by the plaintiff and that the judgment of the trial court in favor of the defendant should be affirmed.

*Affirmed.*