## NEW YORK CENT. R. CO. v. TRANS-AMERICAN PETROLEUM CORPORATION.

### No. 7000.

Circuit Court of Appeals, Seventh Circuit. Dec. 20, 1939.

Rehearing Denied Feb. 5, 1940.

Harry Z. Perel, Bernard Perel, and Abraham H. Maller, all of Chicago, Ill., for appellant.

Sidney C. Murray, Frederick W. Flott, and John B. Kneipple, all of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment entered April 4, 1939, in the sum of $1,059.20 in favor of the plaintiff.

The case was tried by the court upon a stipulation of facts as follows: Between September 17th and September 22nd, 1936, the Hurricane Petroleum Corp., at Overton, Texas (also referred to as the "shipper" or "consignor"), ordered the shipment of five cars of gasoline consigned to the defendant (also referred to as the "consignee" or "reconsignor") at Chicago, Illinois. The plaintiff was the delivering carrier. The shipments were made by Uniform Domestic Bill of Lading[1] in which the defendant was named as consignee.

Prior to the arrival of these shipments at Chicago, the defendant reconsigned each of them to the Independents Petroleum Association Distributing Company (also referred to as the Independents Company) di-

---

[1] Each Bill of Lading contained the following provision: "Subject to Section 7 of conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:

"The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

　　　　"Hurricane Petr. Corp.

　　　　　"(Signature of Consignor)."

Section 7, so far as material, provides:

"* * * except in those instances where it may lawfully be authorized to

recting the plaintiff to deliver the shipments to said company in Chicago, and to collect the freight from it.[2] Without knowledge on the part of the defendant, the plaintiff delivered the shipments to the Independents Company on forty-eight hours credit, (that being the limit of time for extension of credit permitted by the Interstate Commerce Commission) thereby voluntarily releasing its lien on said shipments. At the same time the Independents·Company owed the plaintiff for other shipments (not involved in this case) made prior and during the period that the deliveries involved in this case were made. Said shipments were not delivered to the defendant or to any agent or employee of the defendant, nor were they delivered in defendant's behalf. At the time of the delivery, the Independents Company was the owner of said shipments.

The defendant's business is that of buying and selling gasoline, but it never takes physical possession of the same, but reconsigns such shipments before they arrive in Chicago. It maintains no storage place for gasoline or oil and the plaintiff had knowledge of these facts before and at the time the involved transactions occurred.

The plaintiff billed the Independents Company for the freight charges on each car at the time of delivery of said cars and, thereafter made an effort to collect the same. Upon the failure of the Independents Company to make payment, plaintiff brought this suit against the defendant.

Since the facts were stipulated, the only contested issues relate to the conclusions of law adopted by the court, as follows: (1) Where a consignee directs the carrier to deliver the shipment to a third person, such consignee accepts the shipment and becomes liable for all transportation charges regardless of the fact that the written reconsignment order upon which the carrier acts directs the carrier to collect the freight charges from the one to whom the shipment is delivered; (2) such act of reconsignment, even though delivery is made to the ultimate consignee without collection by the carrier of its charges and upon an extension of credit without the knowledge of, and contrary to the direction of the original consignee, does not relieve such consignee from liability for the freight charges; (3) under such circumstances, the doctrine of estoppel can not be invoked against the carrier in an action to recover such freight charges from the original consignee. With reference to this conclusion, the court states: "The rule of estoppel is not applicable to this case because of the fact that Sec. 6, par. 7 of the Interstate Commerce Act (U.S.C.A., Title 49, Sec. 6, Par. 7) forbids a carrier from granting a rebate or from discriminating."

The contention of the plaintiff is that the defendant, by its act of reconsignment, accepted the shipments; that such an acceptance constituted delivery within the terms of the Bill of Lading and, that it therefore became liable for freight charges and, further, that it could not and did not relieve itself of liability by its directions[3] to collect its charges upon delivery to the Independents Company. On the other hand, it is argued by the defendant that delivery was not made to it and it never became liable. Further, that even if it became liable, a new contract or agreement was made with the carrier by which it was relieved of liability.

The question presented is a difficult one. It has often been discussed by text writers and courts, with many divergent views and conflicting results. We think it may be said that the earlier authorities are to the effect generally that the consignee who reconsigns under the same circumstances as in this case is not liable for the carrier's

---

do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor * * * shall not be liable for such charges."

[2] Such instructions were given by letters, the language of which varied somewhat, but substantially all contained the following clause: "On arrival and without extra expense to us, please deliver these cars to the Independents Company."

[3] As noted from our statement of facts, there is room for doubt as to whether the reconsignment order included a direction to collect freight. The parties, however, seem to have so construed the order and we shall do likewise.

charge.[4] The leading authority and perhaps the first, holding to the contrary is that of New York Central R. Co. v. Warren Ross Lumber Co., 234 N.Y. 261, 137 N. E. 324, 24 A.L.R. 1160. This decision has frequently been followed,[5] but there are at least two decisions repudiating the rule.[6]

Notwithstanding that the weight of authority seems to be against the defendant, we are urged that reason and logic so plainly support its position as to require a holding in its favor. After a careful study of the situation and the authorities, we agree with defendant's contention.

Previous to our discussion, it seems appropriate to ascertain to what extent, if any, the contractual rights of the consignor, consignee and carrier are limited or affected by the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. In doing so, we must keep in mind the distinction between the cases dealing with unlawful and lawful charges. In the former it is held that contracts, express or implied, are of no effect because in conflict with public policy,[7] while in the latter, no such impairment exists. Without referring to the various provisions of the act, it is sufficient to state, so far as now pertinent, the law concerns itself only with the requirement that the carrier collect the rate fixed, without discrimination. As was said by the court in Louisville & N. R. Co. v. Central Iron Co., supra, 265 U.S. page 66, 44 S.Ct. page 442, 68 L.Ed. 900: " * * * The tariff did not provide when or by whom the payment should be made. As to these matters carrier and shipper were left free to contract, subject to the rule which prohibits discrimination. The carrier was at liberty to require prepayment of freight charges, or to permit that payment to be deferred until the goods reached the end of the transportation. Wadley Southern Ry. Co. v. Georgia, 235 U.S. 651, 656, 35 S.Ct. 214, 59 L.Ed. 405. Where payment is so deferred, the carrier may require that it be made before delivery of the goods, or concurrently with the delivery, or may permit it to be made later. * * *"

In Wadley Southern Ry. Co. v. Georgia, 235 U.S. 651, 656, 35 S.Ct. 214, 215, 59 L. Ed. 405, the court announces the same rule, and states: " * * * And, as there is a lien on the goods to secure the payment of charges, it is often a matter of indifference whether the freight is collected at the beginning or at the end of the transportation. The law has therefore always recognized that the company could exercise the one option or the other, according to the convenience of the parties, the course of trade, the sufficiency of the goods to pay the accruing charges, and other like considerations."

Thus, it seems plain that the carrier is free to contract with the shipper as to when and by whom the charges of transportation shall be paid. It was by reason of this authority that the carrier in the instant case, in its Bill of Lading, agreed that the shipments were received "without recourse on the consignor." In other words, the carrier contracted that it would look to the consignee for its charge and "shall not make delivery without payment." It would seem the only liability incurred by the consignor was that the shipments would be accepted upon delivery. The defendant, as consignee, was, of course, not a party to this agreement and it was not contemplated that it should become liable until the delivery of the freight at the point of destination.

The rule and the reason therefor is aptly stated in Union Pacific R. Co. v. American Smelting & Refining Co., 8 Cir., 202 F. 720, 723, where it is said: " * * * The law is well settled that such a contract is implied from the acceptance by a consignee or consignees of goods shipped under a bill of lading which contains the stipulation, the consignee or consignees

---

4 Wallingford Bros. v. Bush, 8 Cir., 255 F. 949, 950; Chicago I. & S. R. Co. v. McMillan & Bro. Coal Co., 207 Ill. App. 58, 61; 4 Elliott on Railroads, 3d Ed.1921, page 873; 2 Hutchinson on Carriers, 3d Ed.1906, Section 808.

5 Wabash Ry. Co. v. Horn, 7 Cir., 40 F.2d 905; Dare v. New York Cent. R. Co., 2 Cir., 20 F.2d 379; New York Central R. Co. v. Little-Jones Coal Co., D.C., 25 F.Supp. 337; New York Central R. Co. v. Platt & Brahm Coal Co., 236 Ill.App. 150.

6 Pere Marquette R. Co. v. American Coal & Supply Co., 239 Ill.App. 139, 145, 146, 148; Chesapeake & Ohio Railway Co. v. Southern C., C. & M. Co., 254 Ill.App. 238, 246, certiorari denied 282 U.S. 860, 51 S.Ct. 34, 75 L.Ed. 761.

7 Pittsburgh, C., C. & St. L. Ry. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; L. & N. R. Co. v. Central Iron Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900; New York Cent. & H. R. R. Co. v. York & Whitney Co., 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016.

paying freight, or any similar provision. [Citing cases.]" Then follows: "The reason for this rule is that the consignee accepts the goods with knowledge that the carrier looks to him for payment of the transportation charges and waives his lien for them by delivery in reliance upon the consignee's implied promise, evidenced by his acceptance of the goods, that he will pay the charges. * * *"

In the Warren Ross case, under similar facts,[8] the court concluded that the act of reconsignment was an acceptance of the goods and services rendered so as to fix liability upon the consignee. The court states, 234 N.Y. 261, 137 N.E. 324, 325, 24 A.L.R. 1160: " * * * As defendant was the presumptive owner, if it accepted the freight in the capacity of owner, the law implied a promise on its part to pay the charges (Pittsburgh, C., C. & St. L. Ry. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151) * * *." We agree with this statement of the law, but in our opinion it has no application to the situation before the court, there or here. The Fink case, there cited and relied upon, we think supports our conclusion. There the court considered a case where the original consignee had actually accepted delivery and paid the charges requested, which were afterwards discovered to be less than the lawful rate. The suit was for the difference. No question of reconsignment was involved. Recovery was permitted on the theory that the Commerce Act makes it unlawful for the carrier to receive compensation less than the sum fixed by the tariff rates. The court said, 250 U.S. 577, on page 582, 40 S.Ct. on page 28, 63 L.Ed. 1151: " * * * For the legal charges the carrier had a lien upon the goods, and this lien could be discharged and the consignee become entitled to the goods only upon tender or payment of this rate, * * *"

While the instant defendant, by its act of reconsignment, no doubt exercised a control or dominion over the shipments— which was some evidence of ownership— yet we do not believe that such a qualified or conditional acceptance was such as to fix liability upon it. This view is strengthened by the stipulation that the shipments "were not delivered to the defendant or to any agent or employee of the defendant, nor were they delivered in defendant's behalf," and that the Independents Company, at the time of delivery, "was the owner of said shipments." The carrier, in its contract with the consignor, by which the latter was released from liability, to us plainly contemplated that the carrier was to receive its charge upon the actual delivery of the freight from the party to whom such delivery was made and not from the original consignee, merely because during the course of transit it might perform some act construed to be a conditional acceptance. To fix liability upon the defendant is to make a technical application of the rule, but to ignore the reason therefor. Union Pacific R. Co. v. American Smelting & Refining Co., supra. In the instant case, the carrier did not look to the defendant for the payment of its transportation charges. On the contrary, it looked to the one to whom delivery was ultimately made, and its lien was intact until that time.

In the Warren Ross case it was also held that no contractual relation was created by reason of the consignee's directions for reconsignment. The court states, 234 N.Y. 261, 137 N.E. 324, page 325, 24 A. L.R. 1160: " * * * The language used in defendant's letter was not contractual. Its effect was merely to give plaintiff an option to demand payment from the person to whom it delivered the goods."

Neither do we agree with this conclusion. The consignee in that case and here gave the carrier written directions to deliver the freight to a third party from whom collection was to be made. To us that was an offer which the carrier, by its act of performance, accepted and thus a contractual relation resulted.

We agree with the conclusion reached in Chesapeake & O. Ry. Co. v. Southern C., C. & M. Co., 254 Ill.App. 238, 246, where the court, concerning a similar situation, said: "When the defendant gave written instructions to plaintiff to deliver the cars in question to the Lakeside Coal Company (one who was not its agent), under express conditions that amounted to a direction to plaintiff to collect the freight at point of delivery from defendant's as-

---

[8] Some distinction might be made in the facts, although perhaps not material. In the instant case, for instance, it was stipulated that the ultimate consignee was the owner of the goods and that that fact was known to the carrier; while in the Warren Ross case there was nothing to show but that the ultimate consignee might have been the agent of the first consignee.

signee, plaintiff having accepted such reconsignment order was bound as a matter of contract between the parties to look to such assignee for its freight charges in the event that defendant's assignee (the Lakeside Coal Company) accepted such shipment. * * * "

It seems to us the statement "its effect was merely to give plaintiff an option to demand payment from the person to whom it delivered the goods" is clearly erroneous. On the contrary, the carrier had no discretion—it was under a positive duty to collect from such person. This duty arose not only from the directions received by the consignee at the time of reconsignment, but from its contract with the consignor. In addition, under all the authorities, this duty, unless relieved by contract, was imposed by law.

We shall not comment upon other cases following the rule of the Warren Ross case, except that of Wabash Ry. Co. v. Horn, 7 Cir., 40 F.2d 905, an opinion of this court which, no doubt, lends support to plaintiff's theory. To some extent, however, it is distinguishable from the instant case. The court, 40 F.2d on page 906, said: "So far as known to plaintiff [carrier], defendants [consignee] were then the owners of the lumber and the Globe Trading Company [to whom delivery was made] was their agent." In that case the consignee had in its possession the Bill of Lading which it retained even to the time of the trial. Whether this distinction in itself is sufficient to call for the application of a different rule, we need not decide. At any rate, we now reach a different conclusion.

As already stated, it is our conclusion that the defendant did not become liable for the charges in question; but even so, it entered into a contractual relation with the carrier by which it was relieved. As heretofore pointed out, the carrier is free to contract as to who shall be liable for its carrying charge as fixed by law. It had a right to contract with the consignor, relieving it from liability, and we find nothing in the Interstate Commerce Act which precludes it from likewise contracting with the consignee who reconsigns. To us this is a reasonable and logical deduction. The carrier, in any event, retains its lien until actual delivery, and has the same means of protecting itself as it had before. The adoption of plaintiff's contention is to place the carrier in a more advantageous position than it was before the reconsignment, when it could only look to the one accepting delivery for its charges. After reconsignment, however, it not only looked to the one to whom delivery was actually made, as required, but also to the consignee who, after the order of reconsignment, had no way of protecting itself as to the terms and conditions upon which the ultimate consignee was permitted to receive the shipments.

Undoubtedly, if delivery had been made to the original consignee on credit, it would have been at the risk of the carrier. This follows from the contract made with the shipper agreeing to carry the shipments on what amounts to a C. O. D. basis. If it had a right, as we think it did, to produce this situation, we see no reason why it could not create a similar situation by agreement with the original consignee.

Plaintiff's theory would place at the disposal of the carrier a means of practicing rather than preventing discrimination. For instance, delivery to the original consignee would be at the carrier's risk. It would thus be important that credit be extended only where the financial responsibility of the consignee justified. In contrast, where a delivery was made to a second consignee, as in the instant case, delivery would not be at the carrier's risk. It could still look to the one who reconsigned. In extending credit, the financial responsibility of the one receiving the shipment might be of little importance. Thus, one who receives shipment as original consignee, might be placed at a disadvantage in comparison with the one who received under a reconsigned shipment.

Keeping in mind that this case does not involve an unlawful rebate, nor one where the charges are less than that called for by law, we think the liability of the Independents Company, to whom delivery was ultimately made, satisfies the requirements of the Interstate Commerce Act. Louisville & N. R. Co. v. Central Iron Co., 265 U.S. 59, 70, 44 S.Ct. 441, 68 L. Ed. 900; Chesapeake & O. Ry. Co. v. Southern C., C. & Co., supra, 254 Ill.App. page 247.

The judgment of the District Court is reversed.