**WALTON TRANSPORTATION COMPANY,**
Inc., Appellant,

v.

**HOUSTON PIPE LINE COMPANY,**
Appellee.

No. 13969.

Court of Civil Appeals of Texas.

Houston.

June 21, 1962.

Rehearing Denied July 12, 1962.

Lloyd L. Oubre, San Antonio, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Robert M. Welch, Jr., Houston, for appellee.

BELL, Chief Justice.

Appellant sued appellee to recover transportation charges of $12,148.53, the charges being for transportation of steel plate, during October and November, 1957, from Houston to Texas City. Appellant also sought to recover attorney's fees. The trial court, after a trial before the court without a jury, entered a take nothing judgment.

There are no findings of fact and we must, therefore, presume the court found every fact, which finds support in the evidence, in a manner so as to support its judgment.

It appears that a Mr. Sample owned some steel plate that was stored in Houston with Walton Stevedoring and Contracting Company, herein called Walton and Company. Walton and Company were storing it as a bonded warehouseman. Mr. Sample arranged for appellee to take title to the plate and Walton and Company continued to hold it as a bonded warehouseman for the account of appellee. Mr. Sample became

president of Texas Rolling Mills, Inc., herein called Mill. The Mill contemplated building a plant in either Houston or Texas City. The Mill entered into a contract with appellee whereby it was to manufacture pipe for appellee at so much per foot. The Mill had wanted appellee to give it some financial assistance but this was refused. Appellee did, however, agree to help to the extent of contracting for pipe. The plate was to be rolled into pipe. The Mill decided to build its plant at Texas City.

It is not entirely clear from the record as to how negotiations for the removal of the plate from Houston to the plant at Texas City commenced. It is, however, deducible from the evidence that both appellant and Walton and Company, they being associated companies, were interested in developing business relations with the Mill. Walton and Company leased storage or warehousing facilities at Texas City from the Mill. Mr. Olmsted, who represented both appellant and Walton and Company, and Mr. Means, who was representative of appellee, went to see Mr. Hitchcock, the Mill representative, the purpose apparently being to determine if the storage facilities at Texas City were satisfactory to appellee. Too, permission had to be obtained by Walton and Company from appellee to move the plate from its warehouse in Houston to its storage facilities at Texas City. Mr. Means told Mr. Hitchcock and Mr. Olmsted that appellee would grant permission to move the plate but at no expense to appellee. Mr. Olmsted then stated they had a contract with the Mill. Earlier Mr. Roland Walton had talked with Mr. Spurger of appellee about getting permission of appellee to move the plate. He did not, nor did Mr. Spurger, remember that they talked about transportation charges. Appellant's representatives do not claim that appellee expressly agreed to be responsible for the transportation charges. Appellant seeks to imply that appellee agreed to pay the charges if the Mill did not. Appellant's witnesses say they agreed to "bill" the Mill. That is as far as they go. Too, Mr. Roland

Walton said appellant would never have sued appellee if the Railroad Commission had not insisted that appellee was liable to appellant under all the facts.

About October 26, 1957, appellant started moving the plate. On November 1 Mr. Means, for appellee, wrote Walton and Company giving appellee's authority to move the plate. In the letter it was stated that it was appellee's understanding that it would not be charged any cost of moving the plate. Then it is stated the purpose of the letter was to "permit" movement of the plate. The plate was to remain with Walton and Company for the account of appellee as a bonded warehouseman.

Uniform straight bills of lading were issued by appellant. Appellee had nothing to do with the issuance or preparation of them. They called for shipment "collect". The plate was delivered by Walton and Company to appellant. When it reached its destination it was receipted for by Walton and Company. Each bill of lading showed the consignee to be Walton and Company and the shipper to be Texas Rolling Mills. The person alleged to have delivered the plate varies. Most of them show delivery by Houston Natural Gas Corp., though some show appellee. Admittedly the plate belonged to appellee. Delivery was actually by Walton and Company who was warehousing the plate for the account of appellee. Delivery was also to Walton and Company.

The effect of the whole record is to sustain implied findings by the trial court that appellant contracted with the Mill to transport the plate and the Mill would pay the transportation charges. Too, it is reasonably to be inferred that there was an agreement with and understanding by appellant that appellee would not be liable for the charges. We think the evidence clearly supports an implied finding that appellee was in nowise a moving cause of the transportation and that appellant and Walton and Company merely sought, and appellee gave, its permission to move its property

from one warehouse to another. The purpose to be served was that, not of appellee, but of appellant, its associated company Walton and Company and the Mill.

 A carrier is free to contract with respect to who will pay the transportation charges. Houston & T. C. Railway Co. v. Lee County Produce Co., 14 F.2d 145 (D.C. Tex.) ; New York Central Ry. Co. v. Trans-American Petroleum Corp., 108 F.2d 994, 129 A.L.R. 206 (7th Cir.). Here we think the evidence supports the implied finding of a contract between appellant and the Mill that the Mill, and not the appellee, would be liable.

The real contention of appellant seems to be that Walton and Company was the agent of appellee and when they caused the plate to be delivered and received at its destination, they were acting as appellee's agent and thus appellee "caused" the plate to be transported. Appellant relies on those cases which hold that where an owner "causes" freight to be transported "collect" and the charges are not paid by the consignee, the owner is liable. The cases cited do so hold. We deem them inapplicable here because of the facts.

In the first place the relation of bailor-bailee existed between Walton and Company and appellee. Farmers Gin Co. v. Texas Electric Ry. Co., Tex.Civ.App., 232 S.W.2d 890, ref., n. r. e. Walton and Company, however, did not thereby become the agent of appellee. English v. Dhane, 156 Tex. 231, 294 S.W.2d 709.

The basic error in appellant's position is its assumption that in the delivery and receipt of the plate Walton and Company was the agent of appellee for such movement and therefore appellee through its agent "caused" the plate to be moved. Walton and Company was not acting for appellee in causing transportation of the freight. Appellee merely "allowed" movement by giving its permission to those who were the moving parties in obtaining the transportation.

Appellant says any such agreement relieving appellee of liability is contrary to public policy. We overrule the contention. Appellant contracted with the Mill for the charges required by law. The Mill became insolvent and appellant is unable to collect its charges. We know of no policy of the law that would make appellee liable under the facts shown.

The judgment of the trial court is affirmed.