**UNION PACIFIC RAILROAD COMPANY, a corporation, Plaintiff,**

v.

**HALL LUMBER SALES, INC., Defendant.**

No. 66–C–106.

United States District Court
W. D. Wisconsin.

Dec. 27, 1967.

Dennis L. Paul, of Aberg, Bell, Blake & Metzner, Madison Wis., for plaintiff.

Warren E. Kuehling, Madison, Wis., for defendant.

ORDER

JAMES E. DOYLE, District Judge.

From the admitted allegations in the pleadings and from the plaintiff's demand to admit or deny, which demand was neither responded to nor objected to, it appears that:

Plaintiff is a common carrier engaged in the business of transporting freight in interstate commerce. Defendant, Hall Lumber Sales, Inc., is and has been located at Middleton, Wisconsin, during the period in issue. On July 3, 1964, a shipment of one carload of lumber was received by plaintiff, consigned by United Alpine Lumber Co., Pendleton, Oregon, to itself, as consignee, at Beloit, Kansas, for furtherance. On July 8, 1964, plaintiff received a telegram from United Alpine Lumber Co. ordering the diversion of the carload of lumber from itself, as consignee, at Beloit, Kansas, to Hall Lumber Sales, McFarland, Wiscon-

sin. The telegram also ordered that "Section 7 of Conditions" be signed so as to make the delivery "without recourse" on the consignor and so as to direct the carrier not to make delivery without receiving payment for the freight charges; the new freight waybill, now showing defendant Hall Lumber Sales as consignee, was so signed. Prior to arrival of the car at McFarland, Wisconsin, defendant Hall Lumber issued a release order releasing the shipment to the Waubesa Lumber Co., McFarland, Wisconsin, and providing "All charges to follow the car." Following defendant's release order, plaintiff completed delivery to Waubesa Lumber Co. without collection of tariff charges. Waubesa Lumber Co., McFarland, Wisconsin, filed in bankruptcy in 1965 and is no longer in business. Freight charges amounting to $1,079.56 have never been paid.

Plaintiff carrier has now brought this action against defendant Hall Lumber to collect these freight charges.

Plaintiff has moved for summary judgment in its favor, relying principally upon 49 U.S.C. § 3(2), Northwestern Pacific Railroad Co. v. Burchwell, 349 F.2d 497 (5th Cir. 1965) and Pacific Coast Fruit Distributors v. Pennsylvania Railroad Co., 217 F.2d 273 (9th Cir. 1954). Defendant resists the motion for summary judgment, relying principally upon New York Central Railroad Company v. Transamerican Petroleum Corp., 108 F.2d 994, 129 A.L.R. 206 (7th Cir. 1939).

▆▆ The plaintiff carrier appears to concede that the decision by the Court of Appeals for this circuit in New York Central Rilroad Company v. Transamerican Petroleum Corp., supra, (hereinafter referred to as *Transamerican*) is contrary to plaintiff's position in the present action. With one reservation to be noted below, I agree. In *Transamerican* the court expressly noted a line of authority which adopts plaintiff's position and the court rejected this line. Subject to the reservation mentioned, I consider that the facts in *Transamerican* which were critical to the holding there are indis-

tinguishable from those in the present action. The holding of the court was: "The consignee * * * here [in a position comparable to that of defendant Hall Lumber] gave the carrier written directions to deliver the freight to a third party [in a position comparable to that of Waubesa Lumber] from whom collection was to be made. To us that was an offer which the carrier, by its act of performance, accepted and thus a contractual relation resulted." 108 F.2d, at 998. Also, the court held that even if the consignee should by the very act of reconsignment be considered to have exercised such control and dominion over the shipment as to render it liable to the carrier (and the court held that this is not the law), it was also true that the consignee had "entered into a contractual relation with the carrier by which it was relieved." 108 F.2d, at 999. The new contractual arrangement was considered to have superseded and overcome the consequences of the exercise of control and dominion by the consignee, and to have relieved the consignee of liability.

It should be noted that the opinion in *Transamerican* includes these statements:

"At the time of the delivery, the [third party, whose position was comparable to that of Waubesa Lumber] was the owner of said shipments." 108 F.2d, at 996.

"The defendant's business [that is, the consignee whose position was comparable to that of Hall Lumber] is that of buying and selling gasoline, but it never takes physical possession of the same, but reconsigns such shipments before they arrive in Chicago. It maintains no storage place for gasoline or oil and the plaintiff [carrier] had knowledge of these facts before and at the time the involved transactions occurred." 108 F.2d, at 996.

Similar circumstances are not present here, at least in the record to be considered in passing upon the motion for summary judgment. However, in *Transamerican* the court clearly based its deci-

sion wholly on the theory of a new contractual arrangement between the carrier and the consignee. It was not necessary to the holding that the original consignee (comparable to Hall Lumber) was merely acting as the agent of the reconsignee (comparable to Waubesa Lumber).

Plaintiff's contention is that *Transamerican,* although not since overruled by the Court of Appeals of this circuit, is no longer good law because Congress considered the decision erroneous and amended the Interstate Commerce Act in 1940 for the purpose of repudiating the *Transamerican* rule. 54 Stat. 902 (1940), amending 49 U.S.C. §§ 3(2), 3 (3). In Northwestern Pacific Railroad Co. v. Burchwell, 349 F.2d 497 (5th Cir. 1965) (hereinafter referred to as *Burchwell*), this view that the effect of the 1940 amendments was to "overrule" *Transamerican* is vigorously asserted. 349 F. 2d 500–501.

It may well be that Congress intended the 1940 amendments to overrule *Transamerican,* but I cannot agree with *Burchwell* that it succeeded.

The 1940 amendment added to 49 U.S.C. § 3(2) two sentences which refer to shipments "reconsigned or diverted" by a party in a position possibly comparable to that of Hall Lumber here, but apply only "where such shipments are refused or abandoned at ultimate destination [that is, at a destination such as Waubesa Lumber]." This is not the situation in the present action.

The 1940 amendment also added to the Act an entire new section which now appears as 49 U.S.C. § 3(3). Several provisions of 49 U.S.C. § 3(3) render it inapplicable here; it is sufficient to say that it might have imposed liability upon Hall Lumber in the present situation only if delivery had actually been made to it.

Therefore, despite *Burchwell's* evaluation of the effect of the 1940 amend-

ments, I conclude that *Transamerican* continues as the rule of the Seventh Circuit. But for the single reservation noted early in this opinion, I would be disposed to grant summary judgment not to the plaintiff but to the defendant. The one reservation, however, is that the present record does not reveal whether Waubesa Lumber was acting as the agent of Hall Lumber.

I have already noted that it was not necessary to the decision in *Transamerican* that the original consignee there was acting as the agent of the reconsignee which was the owner of the shipment. However, the court in *Transamerican* may have intended to reserve the question whether the original consignee might remain liable for the shipping charges if it was acting as the principal and if the reconsignee was merely acting as its agent. *Transamerican,* 108 F.2d, at 999.

The court requests counsel for the defendant herein, within 20 days from the entry of this order, to submit to counsel for the plaintiff a proposed stipulation with respect to whether at the time of delivery to it Waubesa Lumber was acting as the agent for Hall Lumber. Within 10 days from his receipt of the proposed stipulation, counsel for the plaintiff is to notify counsel for the defendant whether plaintiff is prepared so to stipulate. Should stipulation on the point prove impossible, the court will entertain a motion by defendant for summary judgment, said motion to be supported by affidavit or other appropriate documentation on the presence or absence of the agency relationship. Following plaintiff's response to such a motion, the court will be in a position to determine whether a genuine issue exists as to the fact.

The plaintiff's motion for summary judgment is hereby denied.