**WABASH RY. CO. v. HORN et al.**

No. 3729.

Circuit Court of Appeals, Seventh Circuit.

June 3, 1930.

John Gibson Hale, of Chicago, Ill., for appellant.

Herbert A. Schryver, of Chicago, Ill., for appellees.

Before EVANS, PAGE, and SPARKS, Circuit Judges.

PAGE, Circuit Judge.

The question here is whether the defendants are liable for freight charges under the following stipulated facts:

"That on, to-wit: September 17, 1921, the Shreveport Lumber Company, of Shreveport, Louisiana, shipped from Carthage, Texas, in car B & O 167042, a car load of lumber; that upon said September 17, 1921, the G. C. & S. F. R. R. issued the usual and customary bill of lading upon said car of lumber, showing the Shreveport Lumber Company as shipper or consignor and said Shreveport Lumber Company as consignee, and providing for payment of carrier charges as stated in attached bill of lading (by owner or consignee at destination and if required before delivery), said car to be delivered to themselves at Carpenter, Illinois; that upon September 19, 1921, the said Shreveport Lumber Company forwarded its said bill of lading to the agent of plaintiff at St. Louis, and asked them to divert the car to Charles

Horn Lumber Company at Chicago, Illinois; that accordingly, on October 5, 1921, the plaintiff issued to defendants its bill of lading upon said car of lumber, said bill of lading being attached hereto, and made a part of this stipulation of facts, and being still held by the defendants; that upon September 21, 1921, the defendants in this case wrote the freight agent of the plaintiff at Chicago, the following letter:

" 'Please reconsign B & O car No. 167042, lumber from Carthage, Texas, on September 17th, diverted while in transit at St. Louis to us, Chicago, via Wabash, to Globe Trading Company, Chicago, Illinois, care Belt Ry. at 46th and Arthington Avenue Switch, allowing all charges to follow the car.'

"That said letter was duly received by the plaintiff and that said lumber contained in said car was delivered by the plaintiff to the Globe Trading Company at the point designated in said letter, but without collecting the freight or other charges against said car of lumber.

"It is further stipulated and agreed that the total freight on account of the transportation and delivery of said shipment, according to the published tariffs, amounts to the sum of $215.64, and that if the plaintiff is entitled to judgment herein against the defendants that that shall be the amount of said judgment, unless the court shall be of the opinion that the defendants are liable only for the freight from St. Louis to Chicago, in which event the judgment shall be $70.06. (Carpenter to Chicago).

"It is further stipulated that other deliveries of lumber previous to this delivery, had been made by plaintiff under similar orders of the defendants, to the Globe Trading Company, and that the plaintiff had, without the knowledge of the defendants, extended credit to the Globe Trading Company for the charges against said shipments (if the facts stipulated constitute extension of credit) and that the Globe Trading Company had paid the charges against those shipments, and that in making delivery of said shipment, as directed by the defendants in said letter, the plaintiff expected a remittance covering said freight to be forwarded immediately, or within forty-eight hours by the Globe Trading Company as prescribed by the Interstate Commission's order respecting delivery of interstate shipments.

"It is further stipulated that said lumber in said car had been purchased of the shipper, and sold, by the defendants, previous to said letter dated September 21, 1921, to the Globe Trading Company of Chicago, and that the invoice for said lumber sent by the defendants · to said Globe Trading Company contained the notation as follows:

" 'Lumber covered by this invoice is our property, and so remains, regardless of its location, until we are paid for same,' and that the defendants have never been paid for said lumber by the Globe Trading Company, nor have the defendants ever recovered possession of said lumber, and that the Globe Trading Company is now entirely out of business."

The bill of lading, issued by plaintiff, shows on its face the following:

"This bill of lading is issued in exchange for G. C. & S. F. Railway bill of lading or receipt dated Carthage, Texas 9–17–21."

There has been so much consideration and discussion of the question of the liability of consignees to pay freight, that we think it will not be useful to do more than state our conclusions.

Prior to the request of defendants on September 21st for reconsignment, they had become owners of the car of lumber. The original bill of lading controlled the shipment until October 5th. We are of opinion that defendants, by reason of their ownership and their reconsignment letter, made themselves parties to the following provision in section 8 of each bill of lading:

"The owner or consignee shall pay the freight and all other lawful charges accruing on said property," and thereby became liable to pay the freight.

Plaintiff's bill of lading of October 5th was accepted by defendants, and was yet held by them at the commencement of this suit. Under plaintiff's bill of lading, defendants were consignees. As against the Globe Trading Company, they retained title. So far as known to plaintiff, defendants were then the owners of the lumber and the Globe Trading Company was their agent. We are of opinion that the obligation of defendants to pay the freight was absolute, and that the provision allowing "all charges to follow the car," in the reconsignment letter, was of no force. 'Dare v. N. Y. Cent. R. Co. (C. C. A.) 20 F. (2d) 379; N. Y. Cent. R. Co. v. Warren Ross Lumber Co., 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160; Pittsburgh, etc., Ry. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. ·1151; N. Y. Cent. & H. R. R. v. York & Whitney Co., 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016; L. & N. R. R. v. Cent. Iron Co.,

265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900; 4 R. C. L. p. 857.

The delivery of the shipment, under the circumstances shown in the stipulated facts, was not, under the Interstate Commerce Commission's interpretation of its own orders, and as it seems to be generally understood, a grant of credit. Ex Parte No. 73, 57 I. C. C. 591, 593.

It appears that Charles Horn Lumber Company is a copartnership consisting of Charles Horn and W. H. Gleason, and judgment should be, and is, rendered against them for the full amount of the freight charges.

The judgment is reversed.