NORTHWESTERN PACIFIC RAIL-
ROAD COMPANY, Appellant,

v.

BURCHWELL COMPANY, INC.,
Appellee.

No. 21642.

United States Court of Appeals
Fifth Circuit.

June 23, 1965.

J. Fred Powell and Andrew J. Thomas, Birmingham, Ala., Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., of counsel, for appellant.

Arnold Drennen, Birmingham, Ala., Drennen, Loeb & Drennen, Birmingham, Ala., of counsel, for appellee.

Before WOODBURY,[*] WISDOM, and BELL, Circuit Judges.

WISDOM, Circuit Judge:

The narrow question for decision is whether a consignee who diverts an interstate shipment in transit to another consignee is liable for the freight charges.

The facts are stipulated. Park Loading Company delivered a carload of lumber to Northwestern Pacific Railroad to be shipped from Eureka, California, to Burchwell Company in Eddyville, Kentucky. The uniform straight bill of lading showed Park as consignor and Burchwell as consignee. Park did not execute a non-recourse clause removing Park's liability for the freight. Park directed the carrier to ship the lumber collect, but the carrier erroneously marked the freight waybill prepaid. While the shipment was in transit, Burchwell directed the carrier to deliver the lumber to Lyon County Builders. The order instructed the carrier to collect the freight charges before delivery, but was silent as to liability for freight charges or the

---

* Of the First Circuit, sitting by designation.

ownership of the goods.[1] Northwestern delivered the lumber to Lyon without collecting the freight charges. Lyon became insolvent, and Northwestern sued Burchwell, the original consignee, for the unpaid freight. Burchwell argues that the diversion ended its liability as the original consignee and made the new consignee, Lyon, liable for the freight. On motions for summary judgment by both parties, the district court held for Burchwell. We reverse.

There are two irreconciliable lines of decisions dealing with the question this case presents. New York Central R.R. v. Ross Lumber Co., 1922, 234 N.Y. 261, 137 N.E. 324, 24 A.L.R 1160 is the leading case in a line of decisions holding that if the original consignee diverts a shipment he is liable for the freight charges, because the diversion implies that the consignee is the owner. On the other hand, New York Central Ry. Co. v. Transamerican Petroleum Corp., 7 Cir. 1939, 108 F.2d 994, is the leading case holding that the diversion order does not imply a promise to pay the freight, but is an offer of a new contract terminating the original consignee's liability for the freight. We hold that the Interstate Commerce Act, 49 U.S.C. §§ 3(2) and 3(3), imposes liability for the freight charges on the original consignee unless he notify the carrier that he is not the owner of the goods.[2]

In its modern form the Interstate Commerce Act dates from 1920. The Act then had no provision relating to liability for freight charges after reconsignment in transit. Section 3(2) of the Act merely provided that "[N]o carrier * * * shall deliver or relinquish possession at destination of any freight * * * transported by it until all tariff rates and charges thereon have been paid * * *" 41 Stat. 479 (1920), 49 U.S.C. § 3(2) (as amended).

As a general rule a consignee binds himself to pay freight charges, if he accepts delivery of a shipment in interstate commerce. Pittsburgh, C.C. & St. L. R.R. v. Fink, 1919, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; Louisville & N. R.R. v. Central Iron & Coal Co., 1924, 265 U.S. 59, 70, 44 S.Ct. 441, 68 L.Ed. 900. Ross applied this general rule to a consignee who diverts the shipment in transit. In Ross, as in the instant case, the consignee diverted the shipment in transit, the new consignee failed to pay for the freight, and the carrier sued the original consignee. The New York court held that the consignee who diverts a shipment in transit is liable for the freight, even if he instructs the carrier not to deliver until the new consignee pays the freight. The critical fact is the consignee's failure to inform the shipper that it was not the owner of the goods:

"As to plaintiff [carrier], defendant [original consignee] stood in the relation of owner of the carload of lumber. The bill of lading designated it as consignee. That fact is in itself evidence of ownership. It does not appear from the agreed facts that the plaintiff had knowl-

---

1. The body of the letter stated: "Upon receipt of freight charges please release Car * * * to Lyon County Builders, Eddyville, Ky. Designate Burchwell Company, Inc., Birmingham, Ala., as shipper.
"Please advise Lyon County Builders of arrival of car and Burchwell Company, Inc., of acceptance." (R. 13)
The language of the letter, if anything, cuts against the argument that Burchwell was not the owner of the freight.

2. Section 7 of the "Contract Terms and Conditions" of the bill of lading contains the same language found in sections 3(2)

and 3(3) of the Interstate Commerce Act. (See foldout in Record at 10–11.) The consignor failed to execute the non recourse clause, which incorporates at least a part of Section 7. In spite of the consignor's failure to execute the non recourse clause, the consignee as a matter of contract law may be bound by the other parts of Section 7 which deal with the consignee's liability in case of reconsignment in transit. We rest our opinion on the Interstate Commerce Act itself. The provisions of the act apply whether or not the consignee is bound by Section 7 of the bill of lading.

edge or notice that defendant was not the owner, or that defendant was not in fact such owner. The Schieck-Johnson Company [the new consignee] might, for all that appears, have been the agent of defendant whose duty it was to take delivery on its behalf. As defendant was the presumptive owner, if it accepted the freight in the capacity of owner, the law implied a promise on its part to pay the charges * * *" 137 N.E. at 325.

In 1927 Congress again amended the Interstate Commerce Act, adding a lengthy provision to what is now section 3(2) of the Act. The amendment follows the reasoning of the Ross case:

"Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges * * * if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of the property. In such cases the shipper or consignor, or, in the case of a shipment so reconsigned or diverted, the beneficial owner, shall be liable * * * irrespective of any provisions to the contrary in the bill of lading or in the contract under which the shipment was made. * * * If the consignee has given to the carrier erroneous information as to who the beneficial owner is, such consignee shall himself be liable for such additional charges, notwithstanding the foregoing provisions of this paragraph." 44 Stat. 1447 (1927), 49

U.S.C. § 3(2) (As amended). See Miller, Evolution of the Interstate Commerce Act at 49–50 (1930).

The amendment relieves the original consignee of liability for the freight, provided that he notify the shipper that he is only an agent and furnish the shipper the name and address of the beneficial owner. The Ross court, in dictum, had stated that the diverting consignee would not be liable for freight, if he had notified the shipper that he was not the beneficial owner. The 1927 amendment assumed the correctness of Ross and enacted the Ross dictum into law. The amendment goes on to provide that the original consignee is liable, if he gives the shipper *false* information about the beneficial owner. *A fortiori*, the original consignee is liable if, as in Ross and the instant case he gives the carrier *no* information at all.

Several years after Congress adopted the 1927 amendment, the Seventh Circuit followed Ross in Wabash Ry. v. Horn, 7 Cir. 1930, 40 F.2d 905. In that case the consignor consigned the goods to himself as original consignee and, while the goods were in transit, sold the goods to a second consignee and instructed the carrier to deliver to the second consignee. Apparently the carrier knew that the second consignee owned the goods. The second consignee then directed the carrier to deliver to a third consignee. The third consignee failed to pay the freight and the carrier sued the second consignee. As in Ross, the Seventh Circuit reasoned that the second consignee was liable for the freight for failure to inform the carrier that it was not the beneficial owner of the goods:

"Under plaintiff's bill of lading, defendants were consignees. As against the Globe Trading Company [the third consignees], they retained title. So far as known to plaintiff, defendants were then the owners of the lumber and the Globe Trading Company was their agent. We are of opinion that the obligation of defendants to pay the freight was absolute, and that the provision allowing 'all charges to follow the car', in the re-

consignment letter, was of no force." 40 F.2d at 906.

In July 1939 the House Commerce Committee added to the proposed Transportation Act of 1939 an amendment which later, with modifications, became present section 3(3) of the Interstate Commerce Act. The House Amendment in effect codified the Horn case:

"If a shipper or consignor of a shipment of property (other than a prepaid shipment) is also the consignee named in the bill of lading and, prior to the time of delivery, notifies, in writing, a delivering carrier by railroad * * * (a) to deliver such property at destination to another party, (b) that such party is the beneficial owner of such property, and (c) that delivery is to be made to such party only upon payment of all transportation charges * * * and delivery is made by the carrier to such party without such payment, such shipper or consignor shall not be liable * * * for such transportation charges but the party to whom delivery is so made shall in any event be liable for transportation charges * * * if such party is the beneficial owner * * *" See House Report No. 1217, 76th Cong., 1st Sess. 1939 at 11; 49 U.S.C. § 3(3) (As amended).

If the original consignor-consignee diverts in transit, and the carrier knows the new consignee is the owner, the new consignee is liable for the freight. The proposed 1939 version of section 3(3) of the act reads as if it were a headnote for the Horn case. The 1939 version did not pass; the Senate and House disagreed and the Transportation Bill went to a conference committee.

Several months later, in December 1939, the Seventh Circuit decided N.Y. Central R.R. v. Transamerican Petroleum Corp. in which the court refused to follow Ross and the Seventh Circuit's own Horn case. Transamerican held that a diverting consignee is not liable for the freight, because a diversion is an offer of a new contract releasing the original consignee from liability for the freight. The Seventh Circuit suggested that the court's earlier Horn case was distinguishable in that in Horn the carrier thought that the diverting consignee was still the beneficial owner of the goods, not the new consignee. 108 F.2d at 998. The Seventh Circuit observed that the Interstate Commerce Act was not relevant since there was no issue of freight discrimination, and the act merely directed the carrier not to deliver the goods until the carrier received payment for the freight. 108 F.2d at 997. This is an accurate description of the act *before the 1927 amendments* of section 3(2) of the act, which adopted and impliedly approved the Ross case. The Supreme Court cases relied on in Transamerican were decided before the 1927 amendment of section 3(2) of the act. See 108 F.2d at 997, citing Louisville & N. R.R. v. Central Iron Co., 1924, 265 U.S. 58, 44 S.Ct. 59, 68 L.Ed. 900 and earlier cases.

At the time Transamerican was decided, the proposed Transportation Act of 1939 was still in the conference committee. In April 1940, after the court decided Transamerican, the conference committee added several paragraphs to the Transportation Act (now of 1940). These amendments appear to have been designed to emphasize that the Transamerican case was wrongly decided. See House Report No. 2016, 76th Cong., 3d Sess. 1940, 6–7, 62; House Report No. 2832, 76th Cong., 3d Sess., 6, 7, 66–67; 49 U.S.C. §§ 3(2), 3(3). Congress enacted the 1940 amendments, incorporating and revising the 1939 amendment, as additions to sections 3(2) and 3(3) of the Interstate Commerce Act. 54 Stat. 902 (1940), 49 U.S.C. § 3(2), 3(3).

The conference committee added to section 3(2) a provision that:

"On shipments reconsigned or diverted by an agent who has furnished the carrier in the reconsignment or diversion order with a notice of agency and the proper name and address of the beneficial owner, * * * the said beneficial owner shall be liable for all legally appli-

cable charges in connection therewith. If the reconsignor or diverter has given to the carrier erroneous information as to who the beneficial owner is, such reconsignor or diverter shall himself be liable for all such charges * * * ." House Report No. 2016, 76th Cong., 3d Sess., 1940, at 6–7; 49 U.S.C. § 3(2) (as amended).

The 1940 amendment did not change the scope of section 3(2) of the act. The 1927 amendment, following Ross, had made it plain that the diverting consignee could avoid liability only by giving notice of agency and the name of the beneficial owner. But the 1927 amendment did not say expressly that a *consignee* who diverts in transit is liable for freight; it expressly referred only to the diverting *consignor*. The 1940 amendment, after the Transamerican case released a diverting consignee from liability, fills the gap. The 1940 amendment emphasizes that the consignee who diverts will be liable for freight charges unless he gives accurate notice of his agency and the name of the true owner; it holds the diverting consignee liable if he gives erroneous information. Like the 1927 amendment, it implies that the diverting consignee will be liable if he gives no information at all about the identity of the beneficial owner.

All this legislative history points to only one conclusion. Congress has foreclosed the issue the parties present in this case. Sections 3(2) and 3(3) of the Interstate Commerce Act, interpreted in the light of their history, impose liability for the freight charges on the diverting consignee unless he gives accurate notice of agency and the beneficial ownership of the goods.

█ The parties here may or may not have contracted to release the original consignee from liability; the diversion order did direct the carrier to collect the freight charges before delivery. Perhaps as a matter of contract law the diversion order was an offer of a novation. But sections 3(2) and 3(3) expressly limit the contractual freedom of the parties. Section 3(2) holds the diverting consignee li-

able for freight "irrespective of any provisions to the contrary in the bill of lading or in the contract" unless he gives the required notice. Section 3(3) of the act provides that if a diverting consignor-consignee gives the required notice, the new consignee "shall *in any event* be liable for transportation charges", unless he also gives notice of agency and the identity of the true beneficial owner. These sections, as their history shows, were deliberately intended to adopt the results of the Ross and Horn cases, and to overrule the Transamerican case.

Several modern cases recognize that sections 3(2) and 3(3) give the diverting consignee a method of protecting himself against liability for freight charges. See Illinois Central R.R. v. Western Smelting & Refining Co., D.Neb.1954, 123 F.Supp. 3 (section 3(3) ); Boston & Maine R.R. v. Hannaford Bros. Co., 1949, 144 Me. 306, 68 A.2d 1 (section 3(2) ). We hold that the act by necessary implication makes the diverting consignee liable *unless* he gives accurate notice of agency and beneficial ownership. The act imposes liability on the diverting consignee who gives *erroneous* information as to the beneficial ownership of the goods. Congress could not have intended imposing liability on the consignee who gives inaccurate information but releasing the consignee who gives no information at all. In this situation, "The implications and intendments of a statute are as effective as the express provisions." Laughlin v. Riddle Aviation Co., 5 Cir., 1953, 205 F.2d 948, 949. Compare Worthy v. U. S., 5 Cir. 1964, 328 F.2d 386; U. S. v. Jones, 7 Cir. 1953, 204 F.2d 745, cert. den'd, 346 U.S. 854, 74 S.Ct. 67, 98 L. Ed. 368.

In Transamerican the court argued that the carrier has an unfair advantage if it can elect to hold the original consignee or the new consignee liable for the freight; but for the diversion the carrier could have held only the original consignee. But the carrier relies on the instruction of the original consignee when the carrier diverts the goods and delivers to the new consignee. The carrier, unless

he knows the original consignee is only an agent, relies on the word and the credit of the original consignee. The original consignee's instruction plays as great a role as the fault of the carrier in delivering before prepayment of the freight. The rule of the Interstate Commerce Act does accord with common sense and a reasonable solution of the conflicting interests of the parties.

Reversed and remanded.