**SOUTHERN PACIFIC COMPANY,**
Appellant,

v.

**BROWN, ALCANTAR & BROWN, INC.,**
et al., Appellees.

No. 25580.

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1968.

Rehearing Denied Jan. 10, 1969.

**188**

William J. Derrick, Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., for appellant.

R. Caballero, Asst. U. S. Atty., Don Studdard, Potash, Cameron, Bernat & Studdard, Ernest Morgan, U. S. Atty., El Paso, Tex., for appellees.

Before RIVES and DYER, Circuit Judges, and MEHRTENS, District Judge.

DYER, Circuit Judge:

Southern Pacific Company, claiming that Brown, Alcantar & Brown, Inc. and Commodity Credit Corporation were diverting consignees within the purview of the Interstate Commerce Act, 49 U.S. C.A. §§ 3(2) and 3(3),[1] and that Com-

---

1. Section 3(2) of the Act provides that where a railroad is instructed by the consignor to deliver the property to a consignee other than the consignor himself, such consignee shall not be liable for transportation charges *provided* he:

"(a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of a

modity had also failed to execute a nonrecourse clause in eight bills of lading in which it was consignor but was not named as consignee, brought this action against Brown and Commodity to recover unpaid freight charges for the transportation of twelve cars of corn from El Paso, Texas, to San Ysidro and Calexico, California, the freight charges on the cars having been prepaid by Commodity from points of origin to El Paso. At the close of Southern Pacific's case the Trial Judge directed a verdict for Brown and Commodity. From a judgment entered on the verdict Southern Pacific appeals. We hold that the carriage from El Paso to the final destinations in California was pursuant to a new and separate contract and that therefore §§ 3(2) and 3(3) of the Act do not apply. We affirm as to Commodity and reverse as to Brown.

The twelve cars of corn were admittedly owned by Commodity and were sold by it to Cia. Agricola de Ensenada, S.A., of Mexico. Eight cars were shipped from Sikeston, Missouri, to El Paso via Missouri Pacific Railroad Company and Texas Pacific Railroad Company. Scott County Milling Company, acting for Commodity, was noted on the bills of lading as the shipper. The consignee on these cars was Brown, individually, or acting for J. G. Jung. Four cars were shipped from North Little Rock, Arkansas, to El Paso via Missouri Pacific and Texas Pacific. Adkins Seed Plant, Inc., acting for Commodity, was noted on the bills of lading as the shipper. The consignee on these cars was Commodity in care of Brown. The bills of lading on all of the cars noted that the freight charges were prepaid.

Upon arrival of the cars in El Paso, Brown attempted to arrange for an import permit into Mexico for delivery to Cia. Agricola. Being unable to secure the permit after seven to ten days, Brown wrote the Texas Pacific Railroad directing it to "divert" the cars to California via Southern Pacific.[2] The cars were thereafter transferred from Texas Pacific to Southern Pacific. The bills of lading were not surrendered and only the way bills were forwarded to Southern Pacific. Commodity was not notified nor did it consent to the El Paso-California shipment. Upon delivery of the cars in California, Southern Pacific was not paid by Cia. Agricola and sought to recover its freight charges from El Paso to California from Commodity and Brown.

Southern Pacific pitches its case against Brown entirely upon the proposition that there was a reconsignment and diversion of the cars from El Paso (the place of final destination in the bills of lading) to California without Brown having notified the delivering carrier in writing of the name and address of the beneficial owner of the property, and it places Commodity in the same position with respect to the four cars in which Commodity was named as consignee. On the eight cars that Commodity was named a consignor

shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of the property."

Section 3(3) of the Act provides that where the consignor is also the consignee and, prior to delivery, notifies the carrier to deliver the property to another party, such consignor is not liable for any charges accruing on the shipment *provided* he notifies the carrier in writing that the new party is the beneficial owner of the property, and that delivery is to be made to such party only upon payment of all transportation charges.

2. Except for the description of the cars, the respective destinations of Ysidio and Calexico, and the name of the receiving brokers, the letters were identical. They said, "This is your authority to divert the following listed cars corn to * * *, via Southern Pacific Ry, consigned to Cia. Agricola de Ensenada, S.A. * * *. We kindly request that all demurrage and freight be advanced on each individual car."

but was not named as consignee, Southern Pacific asserts that Commodity is also liable for the freight charges because of the non-execution of the non-recourse clause in each bill of lading.[3]

With the Interstate Commerce Act, 49 U.S.C.A. §§ 3(2) and 3(3),[4] as the foundation, Southern Pacific lays its premise that there was a diversion and then builds its case on Northwestern Pacific Ry. Co. v. Burchwell Co., Inc., 5 Cir. 1965, 349 F.2d 497. By fitting its case within this frame, Southern Pacific asserts liability of the consignees for freight from El Paso to California " 'irrespective of any provisions to the contrary in the bill of lading or in the contract' unless he gives the required notice." Id. at 501. The required notice is, of course, written notice of the name and address of the beneficial owner, which was not given in the letters sent by Brown to Texas Pacific. A fortiori, this eliminates as irrelevant any evidence of Brown's oral disclosure to Texas Pacific of Brown's agency relationship to its principal Cia. Agricola.

We do not agree, however, with Southern Pacific's premise that there was a diversion or reconsignment as contemplated by §§ 3(2) and 3(3) of the Act. The critical fact here is that when Brown directed Texas Pacific to transport the cars to California via Southern Pacific they were not in transit. Diversion, when used in the context of transportation, means "the act or process of changing the route or destination of a shipment while in transit." Webster's Third International Dictionary (1961). See Northwestern Pacific Railroad Co. v. Burchwell Co., Inc., supra. The shipment had reached its destination in El Paso, Texas, as indicated on the bills of lading, and when Brown exercised substantial control over the cars it amounted to a delivery which terminated the contract evidenced by the bills of lading. A further agreement was then necessary for forwarding the shipment to California. Pere Marquette Railway Company v. J. F. French & Company, 1921, 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391.

In Burchwell we held liable under §§ 3(2) and 3(3) of the Act a consignee which diverted an interstate shipment in transit without notifying the carrier that it was not the owner of the goods even though the diversion order had instructed the carrier to collect the charges before delivery. But we did not there change basic contractual rights by continuing a contract which had been fully completed. We simply held that the Act by designating mandatory requirements for giving notice of agency had limited the contractual freedom of the parties. Obviously Burchwell is inapposite on its facts to the case sub judice.

We therefore agree with the finding of the District Court that the original shipment terminated at El Paso and a new contract, for which no bills of lading were issued, was made for the delivery of the cars to California. Southern Pacific was not entitled to recover from Brown by invoking the provisions of §§ 3(2) and 3(3). Brown's status, however, as an agent or principal is another matter. Viewing the evidence and reasonable inferences to be drawn therefrom on this issue in a light most favorable to Southern Pacific, against whom the verdict was directed, we cannot say that a jury verdict might not have been found against Brown as an original consignor under the new contract. Jones & Laughlin Steel Corp. v. Matherne, 5 Cir. 1965, 348 F.2d 394; 2B Barron and Holtzoff (Wright Ed.) § 1075 (1961); 6 Moore, Federal Practice § 59.08(5) at 3814.

What we have said disposes of Southern Pacific's parallel argument con-

---

3. The nonrecourse clause states:
"Subject to § 7 of Conditions, if this shipment is to be delivered to the Consignee without recourse on the consignor, the consignor shall sign the following statement:

"The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
(Signature of Consignor)"

4. See note 1, supra.

cerning Commodity's liability as a diverting consignee on four cars. Delivery, by Brown's exercise of control after arrival of the cars in El Paso, ended all rights and obligations under the contract contained in the bills of lading. Commodity not only had nothing to do with the new agreement to forward the cars to California but had no knowledge of it.

■■ Southern Pacific finally urges that Commodity should be held liable as consignor because it did not execute the nonrecourse clause in the bills of lading. The execution of such a clause is to prevent the carrier from delivering a shipment to the consignee without first collecting the freight, and if the carrier nonetheless makes delivery without receiving payment there is no recourse against the consignor. See Illinois Steel Company v. Baltimore & Ohio R. Co., 1944, 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259. Here, however, Commodity prepaid the freight to El Paso, the place of destination, and there was nothing for a consignee to refuse to pay. Commodity did not know of a shipment beyond El Paso, gave no order for such a shipment, and received no notice that such a shipment was to be or had been made. Commodity had no liability beyond El Paso under its contractual undertaking in the bills of lading. There is no claim by any railroad for any charges incurred between the original shipping points and El Paso. The non-execution of the nonrecourse clause cannot be used to hold Commodity liable for charges accrued beyond the destination named in the bills of lading.

Since Commodity was not a diverting consignee, it cannot be held liable under the *Burchwell* rule. Commodity was not a party to the El Paso-California shipment and cannot be held liable for that freight under any rule.

It follows that as to Commodity the judgment must be affirmed, and as to Brown the judgment must be reversed and the cause remanded for a new trial.

Affirmed in part and reversed in part.