**UNION PACIFIC RAILROAD COMPANY, a corporation, Plaintiff-Appellant,**

v.

**HALL LUMBER SALES, INC.,**
Defendant-Appellee.

No. 17223.

United States Court of Appeals
Seventh Circuit.

Dec. 4, 1969.

See also D.C., 278 F.Supp. 468.

6. S.Rep.No. 187, 86th Cong.; 1st Sess. 8 (1959); 1959 U.S.Code Cong. & Adm.News p. 2324.

James H. Anderson, Byron D. Strattan, Omaha, Neb., Aberg, Bell, Blake & Metzner, Madison, Wis., of counsel, for appellant.

Warren E. Kuehling, Madison, Wis., for appellee.

Before KNOCH, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff Union Pacific Railroad Company brought an action to recover freight charges from defendant Hall Lumber Sales, Inc. There are no issues of fact. The district court gave judgment for Hall, and Union Pacific appealed.

On July 3, 1964, at Pendleton, Oregon, Union Pacific received a carload of lumber for carriage pursuant to uniform straight bill of lading. United Alpine Lumber Co., the consignor, consigned the car to itself at Beloit, Kansas for furtherance. On July 8, United Alpine directed Union Pacific by telegram to divert the car to Hall at McFarland, Wisconsin, to show United Alpine as shipper, to "Sign Sec. 7" and protect 131 cent rate.

A new waybill was made out, in lieu of the original, showing Hall as consignee at McFarland, and showing consignor's signature on the section 7 nonrecourse provision.

On July 10, Hall gave written direction to the Milwaukee Road, delivering carrier, to release the car on arrival at McFarland to Waubesa Lumber and to "Show Hall Lumber Sales, Inc. as shipper on the freight bill, all charges to follow the car, protecting the lowest through rate." We consider this a clear expression of Hall's desire that Waubesa Lumber be held liable for the freight charges.

The Milwaukee Road released the lumber to Waubesa Lumber Company July 15. Freight charges of $1,079.56 ($1.31 rate from Pendleton to McFarland) and a reconsignment charge of $7.72 were not paid. Waubesa is bankrupt.

Hall had bought the lumber from United Alpine July 8 and sold it to Waubesa July 13.

The question whether United Alpine, the original shipper, successfully avoided liability is not before us. Our question is whether Hall as consignee (or reconsignee) did so.

In 1939, this court decided a case which the district court considered indistinguishable: New York Cent. R. Co. v. Transamerican Petroleum Corp.[1] We agree. Unless there is a valid reason for not following it, *Transamerican* supports the judgment of the district court.

This court concluded in *Transamerican* that the freedom of the consignee and carrier to contract concerning the matter in issue was not limited by the interstate commerce act. It recognized that a consignee exercises a degree of dominion over the shipment when it reconsigns, but rejected the *"Ross"*[2] view that such act fixes liability upon the consignee. It concluded that by implication from the consignee's direction to deliver to another and collect freight charges from the other and the railroad's conduct in giving effect to such reconsignment the railroad agreed to accept the liability of

1. (7th Cir., 1939), 108 F.2d 994, 129 A.L.R. 206. See Note, 49 Yale L.J. 1457 (1940).

2. New York Central R. Co. v. Warren Ross Lumber Co. (1922), 234 N.Y. 261, 137 N.E. 324, 24 A.L.R. 1160.

the new consignee (if it accept the shipment) in place of the liability which the original consignee would sustain if it accepted the shipment.

Union Pacific argues, in part, that *Transamerican* was wrongly decided, but more particularly that changes in the interstate commerce act and in the provisions of the bill of lading have superseded the principle of that decision.

Union Pacific relies in part upon a 1965 fifth circuit *Burchwell* decision [3] which concluded that amendments adopted by Congress in 1940 [4] "appear to have been designed to emphasize that the Transamerican case was wrongly decided."

Unfortunately no provision of the statute nor uniform bill of lading prescribed by the Interstate Commerce Commission deals specifically with the liability of a consignee-owner who sells the shipment while in transit and reconsigns to the buyer, making it evident to the railroad that the buyer is to be liable for the freight charges. We therefore examine the statute and bill of lading provisions to see whether there are compelling implications running counter to *Transamerican*.

We point out, in passing, that reconsignment by Hall to Waubesa did not in this case bring about additional transportation service nor increase the transportation charges.

(a) Section 7 of the bill of lading provides in part that "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid." This provision has been the same since 1922.[5] It reflects an earlier provision for payment by the owner or consignee plus the prohibition against delivery without payment, which latter conformed to section 3(2) of the interstate commerce act as created by Transportation Act, 1920, 41 Stat. 479, 49 U.S.C. § 3(2). It makes no distinction between the owner or consignee at the time of delivery and the owner or consignee at any other stage of the transaction.

(b) Section 7 provides further that the consignor shall be liable unless the non-recourse provision is signed and the carrier makes delivery without collection. This provision originated in 1919.[6]

(c) Section 7 further provides a procedure by which a consignee who is different from the shipper or consignor, and is not the beneficial owner of the property, may avoid liability for additional transportation charges, found, after delivery, to have been due, though not billed at the time of delivery.[7] If

---

3. Northwestern Pac. Railroad Co. v. Burchwell Co., Inc. (5th Cir., 1965), 349 F.2d 497, 500. See Note, 40 N.Y.U.L.Rev. 1184 (1965).

4. (amending 49 U.S.C. §§ 3(2) and 3(3).)

5. In Matters of Bills of Lading, 66 I.C.C. 63.

6. In Matters of Bills of Lading, 52 I.C.C. 671, 720, 721, 740.

7. "Provided, that, where the carrier has been instructed by the shipper or consignor to deliver said property to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of said property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in said property, and (b) prior to delivery of said property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of said property; and, in such cases the shipper or consignor, or, in the case of a shipment so reconsigned or diverted, the ben-

such consignee has taken delivery, he is not liable for the unbilled charges if, prior to delivery, he has notified the delivering carrier in writing of his agency and lack of beneficial title. The shipper or consignor is then liable for the additional charges. If such consignee reconsigns or diverts the shipment, he is not liable for the additional charges if he has correctly notified the delivering carrier of the name and address of the beneficial owner. The beneficial owner shall then be liable for the additional charges.

Perhaps it is arguable that this implies that a beneficial owner-consignee who reconsigns, as well as a non-owner consignee who reconsigns but fails to give the required notice, is liable for the charges billed but not collected upon delivery as well as the additional charges neither billed nor collected. This provision, however, had its origin in the 1927 amendment to section 3(2) [8] and existed when *Transamerican* was decided, though not specifically referred to therein.

■■■ We think it is reasonable to interpret this provision consistently with the result in *Transamerican, i. e.*: A consignee or reconsignee who takes delivery is liable for the charges then billed even if not collected. The consignee who reconsigned is not liable for such charges, but if there are additional charges beyond those billed, the beneficial owner at the time of delivery is liable for them if proper notice has been given, and if not, the consignee who reconsigned is liable for them.

■ The legislative history of the 1927 amendment indicates the problem with which Congress was concerned. Under prior case law, the ultimate consignee was compelled to pay the carrier any difference between the full amount of tariff charges required by law and those actually paid, even though the consignee was only a sales agent whose sales price, commission and remittance to his principal were based on the charges paid at the time of delivery.[9] The debates are explicit that the purpose of the amendment was to alter this rule in favor of ultimate consignees who gave notice of their agency.[10]

(d) Section 7 further provides for relief of an agent consignee from liability for all charges where he has reconsigned or diverted a shipment and the shipment is refused or abandoned at ultimate destination. If the agent has given proper and correct notice, the beneficial owner is liable for all charges and the agent consignee who reconsigned or diverted is not.

This provision stems from a 1940 amendment to section 3(2),[11] after the decision in *Transamerican*. It implies, at least, that a consignee who reconsigns or diverts, but does not give the prescribed notice is liable for all charges if the shipment is refused or abandoned at ultimate destination. To that extent it recognizes the *Ross* principle that the act of reconsignment is an act of dominion from which liability may arise and runs counter to the *Transamerican* theory that the railroad has accepted the new consignee in place of the original one. We find, however, no implication that a consignee who reconsigns or diverts, but does not give the prescribed notice, is lia-

---

eficial owner, shall be liable for such additional charges. If the consignee has given to the carrier erroneous information as to who the beneficial owner is, such consignee shall himself be liable for such additional charges."

8. 44 Stat. 1447, 49 U.S.C. § 3(2).

9. See, *e. g.*, New York Central & Hudson River Co. v. York & Whitney Co. (1921), 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016.

10. 67 Cong.Rec. 12756–62 (1926). Although this amendment was enacted as part of S. 3286, 69th Cong., 2d Sess., (1927), the debates of this section are found in connection with H.R. 12065, 69th Cong., 1st Sess. (1926), which originally contained this provision. Perhaps this explains why the legislative history has not been cited in the cases thus far.

11. 54 Stat. 902, 49 U.S.C. § 3(2).

ble for all charges if the shipment is accepted at ultimate destination, but the ultimate consignee fails to pay.

(e) Section 7 also provides for a procedure whereby a shipper or consignor who is originally named as consignee may direct delivery to another and shift liability for transportation charges to the latter.[12] If such shipper or consignor notifies a delivering carrier in writing to deliver the property at destination to another, that the other is the beneficial owner (and if that is the fact), and that delivery is to be made only upon payment of transportation charges; and if delivery is made without payment, the shipper or consignor is not liable but the party to whom delivery is so made shall be liable. The latter shall be liable for charges billed at time of delivery. He shall also be liable for additional charges later found to be due unless he has correctly given notice that he is not

the beneficial owner and notice of the name and address of the beneficial owner. This provision stems from the 1940 amendment, creating section 3(3).[13] So far as it goes, liability of the beneficial owner delivery to whom is directed by the shipper or consignor who is also consignee is predicated upon the making of delivery to such beneficial owner, and it neither expresses nor implies an answer to our problem where the person delivery to whom is directed reconsigns to another.

The only legislative discussion of section 3(3) indicates that it was designed to relieve consignors who consign to themselves and later reconsign where instructions to the carrier to collect before delivery are disobeyed.[14]

We are unable to discover any compelling implication, either from provisions in effect at the time *Transamerican* was decided, or from provisions later

12. "If a shipper or consignor of a shipment of property (other than a prepaid shipment) is also the consignee named in the bill of lading and, prior to the time of delivery, notifies, in writing, a delivering carrier by railroad (a) to deliver such property at destination to another party, (b) that such party is the beneficial owner of such property, and (c) that delivery is to be made to such party only upon payment of all transportation charges in respect of the transportation of such property, and delivery is made by the carrier to such party without such payment, such shipper or consignor shall not be liable (as shipper, consignor, consignee, or otherwise) for such transportation charges but the party to whom delivery is so made shall in any event be liable for transportation charges billed against the property at the time of such delivery, and also for any additional charges which may be found to be due after delivery of the property, except that if such party prior to such delivery has notified in writing the delivering carrier that he is not the beneficial owner of the property, and has given in writing to such delivering carrier the name and address of such beneficial owner, such party shall not be liable for any additional charges which may be found to be due after delivery of the property; but if the party to whom delivery is made has given to the carrier erroneous information as to the beneficial owner, such party shall nevertheless be liable for

such additional charges. If the shipper or consignor has given to the delivering carrier erroneous information as to who the beneficial owner is, such shipper or consignor shall himself be liable for such transportation charges, notwithstanding the foregoing provisions of this paragraph and irrespective of any provisions to the contrary in the bill of lading or in the contract of transportation under which the shipment was made. The term 'delivering carrier' means the linehaul carrier making ultimate delivery."

13. 54 Stat. 903, 49 U.S.C. § 3(3).

14. Hearings on H.R. 5726 Before a Subcommittee of the House Committee on Interstate and Foreign Commerce, 76th Cong., 1st Sess. 4–5, 7–9, 18, 20–22 (1939). *E. g.*, at 18: "Now, that particular paragraph [1927 amendment to 3(2)] is a consignee matter. The bill you have before you is a consignor matter. * * *" Here again these hearings occurred in connection with a bill later superseded by S. 2009, 76th Cong., 3d Sess. (1940). It is noteworthy that while the Interstate Commerce Commission originally denied a non-recourse provision for consignor-shippers who reconsign, In the Matters of Bills of Lading, 52 I.C.C. 671 (1919), they had changed their view at the time of these hearings. *Hearings* at 4 (letter from the Chairman of the Legislative Committee of the I.C.C.).

enacted, inconsistent with the result in *Transamerican.*

This was the conclusion reached by the district court. We are not persuaded that *Transamerican* should be overruled, and the judgment is affirmed.