**ST. LOUIS SOUTHWESTERN RAIL- WAY CO., Plaintiff-Appellee,**

v.

**GARVEY ELEVATORS, INC., Defendant-Appellant.**

**No. 74–1141.**

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1974.

James B. Barlow, Jay S. Garrett, Ft. Worth, Tex., for defendant-appellant.

Mark Alan Calhoun, Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and GODBOLD, Circuit Judges.

THORNBERRY, Circuit Judge:

Garvey Elevators, Inc. ("Garvey"), acting in effect as a broker, purchased thirty carloads of corn from the St. Louis Grain Company, and resold the grain to Rite Care Corporation ("Rite Care"). St. Louis Southwestern Railroad ("the Railroad") loaded the grain in East St. Louis, Illinois and regular bills of lading were issued listing the cargo's destination as Tenaha, Texas, and its owner as Rite Care. The bills indicated that the route from St. Louis would be along Southwestern's track to Shreveport and thence to Tenaha along the tracks of the Southern Pacific. When the cars carrying the corn arrived in Tenaha, where Rite Care had only a post office box, the Railroad's agent, acting on his own, diverted the shipment to Rite Care's plant approximately one mile south of Tenaha. This movement requir ᵈ that the cars be switched to the tracks of the Atchison, Topeka and Santa Fe Railway. Garvey paid the freight charges for the run from East St. Louis to Tenaha, but some time later the Railroad issued "corrected" waybills to which an additional charge had been added for the one mile diversion along the Santa Fe's tracks to the Rite Care plant. Only upon receiving these additional charges did Garvey become aware of the diversion. Consequently, Garvey refused to pay the extra charges; the Railroad then brought this suit to recover them. The district court, upon receiving the jury's answers to the two special issues upon which the case had been submitted, entered judgment for the Railroad. We reverse.

The only disputed issue is the interpretation of the bills of lading contract regarding where the shipments were to be delivered. The bills themselves clearly designate Tenaha as the cargo's destination. The Railroad nevertheless argues that a "custom and practice" existed to the effect that Rite Care always wanted grain shipments brought directly to its plant south of Tenaha. It urges, therefore, that it delivered the grain to its correct destination and is required by law [1] to collect the full freight charge specified in the applicable tariff. Garvey contends (1) that no such custom was proved; (2) that even if it were, they had neither actual nor constructive knowledge of it; and (3) that a carrier can lawfully divert a shipment from its designated destination only when it receives an authorized diversion order or diversion bill of lading.

■ Initially, there is no substance to the Railroad's attempt to make a "strict liability" argument that it is required by law to collect the disputed freight charges. Admittedly, all lawful and authorized charges must be collected according to the terms of the tariff, even if the carrier, for example, inadvertently represents that the charge is less than it actually is. See, e. g., Union Pacific Railroad Co. v. United States, Ct.Cl. 1974, 490 F.2d 1385, 1391; Chicago, Burlington and Quincy Railroad Co. v. Ready Mixed Concrete Co., 8th Cir. 1973, 487 F.2d 1263; Southern Pacific Co. v. Miller Abattoir Co., 3 Cir. 1972, 454 F.2d 357, 359. This principle has never been understood to mean, however, that carriers are entitled to recover the charge set by the tariff even if the carriage is unauthorized or illegal. See Mars Express, Inc. v. David Masnick, Inc., 2nd Cir. 1968, 401 F.2d 891; cf. Trans Ocean Van Service v. United States, 1973, 470 F.2d 604, 615, 200 Ct. Cl. 122 ("A contract involves mutuality, and it would be inconsistent with this principle to permit the plaintiff to increase the amount of the line-haul charge merely by selecting unilaterally a . . . warehouse located in a State different from the destination State agreed upon by the parties" in the bill of lading); Southern Pacific Co. v. Brown, Alcanter & Brown, Inc., 5th Cir.

I. Appellees cite in particular 49 U.S.C. § 6(7), which forbids rate discrimination by rail carriers subject to the Act, and 49 U.S. C. § 6(10), which prescribes criminal penalties for such discrimination.

1968, 404 F.2d 187, 191 (". . . Commodity prepaid the freight to El Paso, the place of destination . . . . Commodity did not know of a shipment beyond El Paso, gave no order for such a shipment, and received no notice that such a shipment was to be or had been made. Commodity has no liability beyond El Paso under its contractual undertaking in the bill of lading"). Because the Railroad is required by law to collect the freight charge specified in the tariff only for authorized carriage, here it needed to prove that the bills of lading contemplated shipment to Rite Care's plant and not just to Tenaha.

At trial the Railroad attempted to do this by proving that the plain words of the bills were modified between the parties by a custom that Rite Care desired delivery of grain at its plant and not at Tenaha.[2] Although the evidence of this alleged custom was hardly overwhelming, the jury answered YES to this issue:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that at the time of the shipments involved herein there was a custom and practice that consignee, Rite Care Corporation, always desired delivery of its railway hopper cars to Rite Care, Texas [*i. e.* Rite Care's plant south of Tenaha]?

On the other hand, they answered NO to the only other issue submitted to them:

SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that Garvey Elevators knew or should have known of the custom and practice, if any?

Both parties moved for judgment on the verdict, but the District Judge, for reasons not specified in the record, entered judgment for the Railroad.

■■■ Appellee now contends that Garvey's knowledge or ignorance of the custom is irrelevant. The Railroad cites no authority for this proposition, however, and offers no explanation for why the district court would submit an "irrelevant" issue or why as plaintiff it made no objection to the issue. In fact, contrary to the Railroad's position, all authorities agree that for a party to be bound by a custom or trade usage that modifies or supplants a written agreement, that party must have actual or constructive notice of the custom or usage. *See, e. g.*, PSG Co. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 9th Cir. 1969, 417 F.2d 659, 662 n. 7, cert. denied, 397 U.S. 918, 90 S.Ct. 924, 25 L. Ed.2d 99; Belcher v. Birmingham Trust National Bank, N.D.Ala.1968, 348 F. Supp. 61, 126; 3 A. Corbin, Contracts § 557, at 246–247 (1960); Uniform Commercial Code § 1–205(3) and comment 7. Since the jury in this case found that Garvey neither knew nor should have known of Rite Care's customary practice regarding grain shipments, the plain words of the bill of lading control. Consequently, the Railroad possessed no au-

---

2. At least this is the most reasonable reading of the record below. In their brief and during oral argument the Railroad put forward two modifications of this theory. First, it points out that the bills of lading provide that "carrier . . . agrees to carry to its usual place of delivery at said destination." Since the jury found that Rite Care customarily expected delivery at its plant, the Railroad argues that it delivered at the "usual place of delivery" in accordance with the contract. Second, and as a slight variation of the first argument, the Railroad apparently contends that all the parties to the transaction intended Rite Care's plant to be the actual place of delivery.

Regarding the first contention, appellees obviously choose to ignore the words "at said destination." The phrase obligates the carrier to deliver to the usual place at the destination specified in the bills; it does not authorize the carrier unilaterally to choose a new destination. On the other hand, the evidence itself renders the Railroad's second contention dubious: Garvey denied any such intent; the bills of lading do not mention the Atchison, Topeka and Santa Fe Railway; and the additional charge claimed by the Railroad for the diversion to Rite Care's plant is greater than Garvey's profit on the entire shipment. In any event, the Railroad bore the burden at trial of requesting issues and instructions in support of these theories.

thority to carry the cargo past Tenaha without a diversion order. Its suit for the recovery of the freight charges on this unauthorized carriage must therefore fail.

Accordingly, the judgment is reversed and the cause remanded for entry of judgment on the verdict for defendant-appellant, Garvey Elevators.