**Robert W. BLANCHETTE, Richard C. Bond, and John H. McArthur, Trustees of the Property of the Penn Central Transportation Company, Debtor, Plaintiffs-Appellants,**

v.

**HUB CITY TERMINALS, INC., Defendant-Appellee.**

No. 80–1571.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1981.

Decided Feb. 6, 1981 *.

---

* This appeal was originally decided by unreported order on February 6, 1981. *See* Circuit Rule 35. The panel has subsequently decided to issue the decision as an opinion.

Richard M. Kates, Chicago, Ill., for plaintiffs-appellants.

Ronald N. Cobert, Washington, D. C., for defendant-appellee.

Before SWYGERT and FAIRCHILD, Senior Circuit Judges, and SPRECHER, Circuit Judge.**

FAIRCHILD, Senior Circuit Judge.

Plaintiffs-appellants, trustees of the Penn Central Transportation Company (hereinafter Penn Central), seek in this action to recover payments for trailer detention charges from defendant-appellee Hub City Terminals, Inc. (hereinafter Hub City). After trial on the merits[1] the district court entered judgment for the defendant. We reverse.

Plaintiffs operated the Penn Central, which offered so-called piggyback service, carrying loaded trailers on flat cars. Although a shipper of a single trailer could contract with Penn Central for this service, significantly lower rates were offered for the shipment of greater numbers of trailers at one time. In order to make use of this lower rate, Hub City operates in Chicago as a consolidator, grouping trailers containing freight from several of its customers. Hub City charged its customers the lower rate per trailer plus a consolidation fee. All bills involved in this action (over 1,000 bills) are for detention charges incidental to shipments between Hub City and Keystone Terminals (hereinafter Keystone) (also a trailer consolidator) in Kearney, New Jersey, for the period 1974–75. Transportation charges have been paid by Hub City and Keystone.

Freight Tariff 26705–D applied to "multiple trailer shipments of not less than ten (10) trailers from one shipper at one origin, to one consignee at one destination within any two (2) consecutive calendar days ... on one bill of lading." Clearly Hub City undertook the obligations of shipper (consignor) of these multiple trailer shipments from Chicago to Kearney, and of consignee of such shipments from Kearney to Chicago.

The present case involves Penn Central's charge for the use of its own trailers instead of trailers owned by Hub City, Keystone, or their customers. Item 1020 of the tariff is entitled "Free Time and Detention Charges for Carrier's Trailers." It provides that at origin "Consignor will be allowed until 11:59 p. m. of the day following the day trailer is picked up by the consignor or his agent to return loaded trailer for shipment. ... " Similar free time is allowed the consignee at destination. In each case Item 1020 provides: "Upon expiration of free time, the charges as provided in Table 'A' will apply." Table "A" sets forth charges for specified types of trailers.

Penn Central contends that since Hub City is always the consignor (shipper) of these multiple trailer shipments originating at Chicago, and always the consignee of such shipments destined for Chicago, Hub City is liable for detention charges at Chicago after free time has expired.

Hub City contends that Penn Central must look to the beneficial owners of the freight, the consolidators' customers, for the detention charges. Apparently Penn Central had formerly agreed to collect from the beneficial owners, and the real issue is whether such an agreement is inconsistent with the tariff.

■ It is well settled that a tariff has the force of law and that a shipper and a carrier are bound by its terms. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619, 621 (7th Cir. 1979).

■ Hub City contends, however, that the tariff is at least ambiguous as to liability for detention charges in a case where

** Circuit Judge Sprecher, who participated in the decision of this appeal, died on May 15, 1982 and did not participate in the decision for publication.

1. The trial was concerned with the issue of liability. The parties had agreed that they would compute the actual damages if the court found Hub City liable to Penn Central.

goods of several are consolidated into one multiple trailer shipment by a consolidator who acts as shipper to another consolidator who acts as consignee. The district court agreed, noting that Item 1020 does not, in express terms, require the consignor or consignee to pay detention charges.

With all respect, we conclude that the language that consignor and consignee "will be allowed" specified free time and that specified charges "will apply" upon expiration of free time clearly places liability for the charges upon the consignor and consignee, respectively.

On appeal, Hub City argues that "consignor" and "consignee" in Item 1020 concerning detention charges may have a different meaning from "shipper," "consignor," or "consignee" in other parts of the tariff, particularly Item 120, providing that the transportation rates apply only to multiple trailer shipments "from one shipper at one origin" to "one consignee at one destination."

We find no predicate for that conclusion. As we read the tariff, persons who desire to act as consolidators in order to ship at the rate provided for multiple trailer shipments from one shipper to one consignee, cast themselves in the role of shipper-consignor, or consignee for the purpose of detention charges as well as transportation charges.

Hub City further points out that where the consolidation practice is used, the person picking up a carrier's trailer is very likely to be a driver employee of the consolidator's customer or of an independent trucker and an agent of the consolidator only in a limited sense if at all. Item 1020 provides, both at origin and destination that "an agreement must be executed between rail carrier and consignor [consignee] or his agent—on a form to be furnished by rail carrier covering utilization of trailer by consignor [consignee] or his agent or motor common carrier while in their possession." Although this provision fits more naturally and obviously with a multiple trailer shipment by one shipper who is also beneficial owner, we do not see it introducing any ambiguity as to the obligation of payment where consolidation happens to have occurred.

Hub City and the district court mistakenly rely upon a past decision of this court as allowing the railroad and Hub City to make a binding agreement to shift tariff charges to a third party, here the beneficial owners of the shipments. The case cited, *New York Central Railroad v. Transamerican Petroleum Corp.*, 108 F.2d 944 (7th Cir. 1939) (hereinafter *Transamerican*) is more limited in its holding. It permits a carrier to contract to relieve a consignee, who reconsigns, from liability for freight charges. In a more recent decision, this court reaffirmed the *Transamerican* holding and described that holding as follows:

> [The *Transamerican* court] concluded that by implication from the consignee's direction to deliver to another and collect freight charges from the other and the railroad's conduct in giving effect to such reconsignment the railroad agreed to accept the liability of the new consignee (if it accepts the shipment) in place of the liability which the original consignee would sustain if it accepted the shipment.

*Union Pacific Railroad v. Hall Lumber Sales, Inc.*, 419 F.2d 1009, 1010–11 (7th Cir. 1969), *cert. denied*, 399 U.S. 905, 90 S.Ct. 2194, 26 L.Ed.2d 559 (1970) (hereinafter *Hall*).

The *Transamerican* rule is not applicable to the facts in the instant action. In this case, there is no reconsignment. There is for each shipment one consignor and one consignee, with Hub City occupying either one of those roles depending upon the direction of the shipment. In the instant case, there is no agreement to "deliver to another *and to collect freight charges from the other*," 419 F.2d at 1010 (emphasis added) required for the *Transamerican* rule to apply.

We also find no merit in Hub City's argument that 49 U.S.C. § 10744 relieved Hub City of liability for detention charges on the shipments for which it was consignee. The predecessor statute, which was in force at the time these detention charges became due, provided in pertinent part:

> Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee shall not be legally

liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title . . . .

49 U.S.C. § 3(2).

In *Hall*, 419 F.2d 1009 (7th Cir. 1969), this court considered a bill of lading provision based upon 49 U.S.C. § 3(2). The court indicated that the provision "provides a procedure by which a consignee who is different from the shipper or consignor, and is not the beneficial owner of the property, may avoid liability for additional transportation charges, *found, after delivery, to have been due, though not billed at the time of delivery.*" 419 F.2d at 1011 (emphasis added). The purpose of this section of 49 U.S.C. § 3(2) was to relieve from liability agent-consignees who paid in full carriers' initial bills, which the carrier later discovered were lower than the rate required by the tariff. In that situation, the consignee who complies with the provisions of the statute is relieved from further liability, which might otherwise work a hardship in instances in which the agent has figured and collected its bill on the basis of the erroneous bill from the carrier. Here, the entire bill was submitted to the consignee. No additional amounts were later found to be due under the tariff. Rather, the railroad billed Hub City for the amounts due to it for line transportation and trailer detention charges. The hardship contemplated by the statute is not present here and the statutory remedy is not applicable in the present case.

Accordingly, the judgment of the district court is reversed and the cause remanded for the determination of the amount of damages and entry of judgment for the plaintiffs.

REVERSED AND REMANDED.